# EXHIBIT M

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

WALTER BEINECKE, III, EAGLIS
ALTERNATIVE INVESTMENTS I, LLC,
GEOFFREY T. FREEMAN, GRAHAM GUND,
HENRY A. JORDAN, JENNIFER C. McNEIL,
J. STUART MOORE, and CARL NOVOTNY,
TRUSTEE of the S&H NOMINEE TRUST,

Plaintiffs,

v.

S&H MARKETING, INC. f/k/a S&H
GREENPOINTS, INC., and THE SPERRY
AND HUTCHINSON COMPANY, INC.,

Defendants.

NEW YORK
COUNTY CLERK'S OFFICE

FEB 19 2008

NOT COMPARED
WITH COPY FILE

Index No. 600503/08
Date Purchased: February 19, 2008

**SUMMONS**

The basis of venue is CPLR 509.

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on the plaintiffs' attorney within 20 days after the service of this summons, exclusive of the date of service (or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded.

Dated: New York, New York
February 19, 2008

Andrew T. Solomon
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000
*Counsel to Plaintiffs*

*Of counsel:*

Laura Steinberg
Pamela H. Holleman
Lesley M. Varghese
One Post Office Square
Boston, MA 02109
Tel. (617) 338-2800

TO:    S&H Marketing, Inc., f/k/a S&H Greenpoints, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

The Sperry and Hutchinson Company, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

*Defendants*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

NEW YORK
COUNTY CLERKS OFFICE

FEB 19 2008

NOT COMPARED
WITH COPY FILE

WALTER BEINECKE, III, EAGLIS
ALTERNATIVE INVESTMENTS I, LLC,
GEOFFREY T. FREEMAN, GRAHAM GUND,
HENRY A. JORDAN, JENNIFER C. McNEIL,
J. STUART MOORE, and CARL NOVOTNY,
TRUSTEE of the S&H NOMINEE TRUST,

· COMPLAINT

Index No. 600503/08

                    Plaintiffs,

v.

S&H MARKETING, INC. f/k/a S&H
GREENPOINTS, INC., and THE SPERRY
AND HUTCHINSON COMPANY, INC.,

                    Defendants.

---

Plaintiffs Walter Beinecke, III, Eaglis Alternative Investments I, LLC, Geoffrey T.

Freeman, Graham Gund, Henry A. Jordan, Jennifer C. McNeil, J. Stuart Moore, and Carl

Novotny, Trustee of the S&H Nominee Trust, by their attorneys, Sullivan & Worcester LLP,

complain of the defendants S&H Marketing, Inc. f/k/a S&H Greenpoints, Inc. and The Sperry

and Hutchinson Company, Inc., and allege as follows:

1.     This is a challenge by Plaintiff noteholders to Defendants' issuance of certain

guarantees, in favor of their parent company, and to the detriment of Plaintiffs in their capacity

as creditors of both Defendants.

## Parties

2.     Plaintiffs Walter Beinecke, III ("Beinecke"), Eaglis Alternative Investments I,

LLC ("Eaglis"), Geoffrey T. Freeman ("Freeman"), Graham Gund ("Gund"), Henry A. Jordan

("Jordan"), Jennifer C. McNeil ("McNeil"), J. Stuart Moore ("Moore"), and Carl Novotny, as

Trustee of the S&H Nominee Trust (the "Trust") are holders of certain notes issued by Defendants.

3.     On information and belief, Defendant The Sperry and Hutchinson Company, Inc. ("S&H") is a New Jersey corporation with a principal place of business in Delray Beach, Florida. S&H maintains an office in Westchester County, New York.

4.     On information and belief, Defendant S&H Marketing, Inc., f/k/a S&H Greenpoints, Inc. ("S&H Marketing"), is a Delaware corporation with a principal place of business in Delray Beach, Florida.

5.     On information and belief, S&H is a wholly-owned subsidiary of S&H Marketing, Inc. Defendants S&H Marketing and S&H are herein together referred to as the "S&H Entities".

## Jurisdiction

6.     Jurisdiction over Defendants is proper under CPLR 301 and 302. At least one of the S&H Entities maintains an office in Rye Brook, New York. In addition, on information and belief, a substantial part of the transactions and tortious acts giving rise to Plaintiffs' claims occurred in New York, and the transactions at issue herein are based on documents that are explicitly governed by New York law.

## Relevant Background Facts

7.     Pursuant to Stock and Note Purchase Agreements dated as of February 20, 2001 and as of June 29, 2001, respectively, the S&H Entities issued Joint and Several Secured Notes (the "S&H Notes") to, *inter alia*, Plaintiffs Beinecke, Eaglis, Gund, Moore, and the Trust and to LHC Corporation ("LHC"). LHC subsequently endorsed the S&H Notes issued to it to Plaintiffs Freeman, Jordan, and McNeil. As of November 2006, after giving effect to a $3 million

2

prepayment, the aggregate amount then due on the S&H Notes was approximately $24 million. Plaintiffs (sometimes altogether referred to herein as the "S&H Noteholders") are the current holders of the S&H Notes.

8.    On December 5, 2006, pursuant to an Agreement and Plan of Merger and Reorganization dated as of November 3, 2006 (the "Merger Agreement"), S&H Marketing became a wholly-owned subsidiary of Solidus Networks, Inc. ("Solidus"). In connection with the merger transaction (the "Merger"), and as reflected in §1.11 of the Merger Agreement, Plaintiffs, Solidus, and the S&H Entities entered into a Note Amendment and Assumption Agreement dated as of December 5, 2006 (the "Merger Note Agreement"). A copy of the Merger Note Agreement is attached hereto as Exhibit A. The Merger Note Agreement provides that it is governed by Massachusetts law.

9.    Pursuant to Section 1.1 of the Merger Note Agreement, Solidus became jointly and severally liable with the S&H Entities for the S&H Notes and for all obligations of the S&H Entities in respect of the S&H Notes. In return, the S&H Noteholders agreed (a) to extend the maturity dates for the S&H Notes, (b) to modify the collateral for the S&H Notes, so that the S&H Notes would thereafter be secured only by all right, title, and interest of the S&H Entities to, in, and under certain enumerated trademarks of S&H Entities (the "S&H Trademarks"), the goodwill associated with the S&H Trademarks, and all proceeds and products of the S&H Trademarks (collectively, the "S&H Trademark Collateral"), and (c) to subordinate the S&H Notes to certain "Senior Secured Obligations" of Solidus outstanding under an Amended and Restated Securities Purchase Agreement dated as of December 6, 2005 (the "Solidus Securities Purchase Agreement" between Solidus and its senior lenders (the "Solidus Senior Lenders").

3

10.    The S&H Noteholders duly executed and delivered all documents required to implement the provisions of the Merger Note Agreement.

11.    On information and belief, approximately nine or ten months prior to the Merger, Solidus caused some or all of its subsidiaries to execute a Guarantee dated as of February 28, 2006 (the "Guarantee") pursuant to which such subsidiaries jointly and severally guaranteed Solidus' obligations to the Solidus Senior Lenders under the Solidus Securities Purchase Agreement. A copy of the Guarantee is attached hereto as Exhibit B. The Guarantee provides that it is governed by New York law. As recited in Section 8 of the Guarantee, pursuant to the Solidus Securities Purchase Agreement, Solidus was required to cause each of its direct and indirect after-acquired subsidiaries to execute and deliver to the Solidus Senior Lenders a supplement to the Guarantee, whereby each such subsidiary would become an additional guarantor under the Guarantee.

12.    On information and belief, prior to the execution of the Merger Agreement and as memorialized in a Consent, Waiver and Amendment Agreement dated as of November 2, 2006 between Solidus and the Solidus Senior Lenders (the "Solidus Senior Lenders Consent Agreement"), Solidus sought and received the consent of the Solidus Senior Lenders to Solidus' entry into the Merger Agreement. A copy of the Solidus Senior Lenders Consent Agreement is attached hereto as Exhibit C. As stated in Section 2(a) of the Solidus Senior Lenders Consent Agreement, the Solidus Senior Lenders conditioned their consent to the Merger on (a) the S&H Noteholders entering into a subordination agreement whereby the S&H Notes would be subordinated to Solidus' obligations to the Solidus Senior Lenders and (b) the S&H Entities becoming guarantors under the Guarantee.

4

13.    Prior to the execution of the Merger Agreement and prior to the consummation of the Merger, the S&H Noteholders were not advised of either the existence or the terms of the Solidus Senior Lenders Consent Agreement or the fact that, once acquired by Solidus, the S&H Entities would be required to become joint and several guarantors of Solidus' Obligations under the Solidus Securities Purchase Agreement.

14.    On information and belief, on or about June 15, 2007, Solidus caused the S&H Entities to become joint and several guarantors of Solidus' Obligations under the Solidus Securities Purchase Agreement. This was accomplished by having the S&H Entities execute Supplement No. 2 dated as of June 15, 2007 to the Guarantee ("Guarantee Supplement No. 2"). A copy of Guarantee Supplement No. 2, which purports to be signed by Steve Zelinger as General Counsel and Secretary of each of the S&H Entities, is attached hereto as Exhibit D. Like the Guarantee, Guarantee Supplement No. 2 provides that it is governed by New York law.

15.    On information and belief, Guarantee Supplement No. 2 was not properly authorized by or executed on behalf of S&H and is accordingly not a valid undertaking of S&H. But even if Guarantee Supplement No. 2 is determined to have been properly authorized by and executed on behalf of S&H and to be a valid undertaking of S&H, neither of the S&H Entities received reasonably equivalent value or fair consideration in connection with its execution and delivery. All that Guarantee Supplement No. 2 accomplished was the further subordination of the S&H Noteholders, without their knowledge or consent.

16.    In addition, in autumn 2007, Solidus was placed into bankruptcy and ultimately became a debtor in possession under Chapter 11 of the United States Bankruptcy Code. In or around December 2007 and January 2008, Solidus arranged for further Senior Lender financing (the "DIP Financing") which is likewise secured by, *inter alia*, new guarantees given by the

5

S&H Entities (the "DIP Guarantees"). On information and belief, the S&H Entities provided the

DIP Guarantees for the DIP Financing without the receipt of reasonably equivalent value or fair

consideration therefor. The issuance of such guarantees will still further impair the ability of the

S&H Noteholders to be timely paid on the S&H Notes and dilute the value of or render

meaningless the S&H Trademark Collateral.

## AS AND FOR A FIRST CAUSE OF ACTION
## FRAUDULENT TRANSFER

17.    Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs 1-

16 above.

18.    The S&H Entities' execution and delivery of Guarantee Supplement No. 2 was

not in the ordinary course of the S&H Entities' business or business activities, was done

clandestinely, and occurred without the S&H Entities receiving reasonably equivalent value or

fair consideration in exchange for the Guarantee obligation that they undertook.

19.    At the time that they executed and delivered Guarantee Supplement No. 2 in June

2007, the S&H Entities believed or reasonably should have believed that, by execution and

delivery thereof, they would incur debts beyond their ability to pay when such debts came due

under Guarantee Supplement No. 2.

20.    The S&H Entities' execution and delivery of Guarantee Supplement No. 2 in

favor of the Solidus Senior Lenders was a transfer or conveyance that was fraudulent as to the

S&H Noteholders pursuant to Mass. General Laws c.109A, §5(a)(2) or other applicable law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FRAUDULENT TRANSFER

21.    Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs 1-

20 above.

22.     The S&H Entities' execution and delivery of Guarantee Supplement No. 2 was not in the ordinary course of the S&H Entities' business or business activities, was done clandestinely, and occurred without the S&H Entities receiving reasonably equivalent value or fair consideration in exchange for the Guarantee obligation that they undertook.

23.     Upon information and belief, the S&H Entities were not acting in good faith with respect to the S&H Noteholders when they executed and delivered Guarantee Supplement No. 2.

24.     On information and belief, the S&H Entities executed and delivered Guarantee Supplement No. 2 with actual intent to hinder, delay, or defraud their present or future creditors.

25.     The S&H Entities' execution and delivery of Guarantee Supplement No. 2 in favor of the Solidus Senior Lenders was a transfer or conveyance that was fraudulent as to the S&H Noteholders pursuant to Mass. General Laws c.109A, §5(a)(1) or other applicable law.

## AS AND FOR A THIRD CAUSE OF ACTION
## FRAUDULENT TRANSFER

26.     Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs 1-25 above.

27.     Upon information and belief, the S&H Entities (a) provided Guarantee Supplement No. 2 and incurred the obligations thereunder without receiving reasonably equivalent value or fair consideration in exchange therefor and (b) were rendered insolvent as a result of their execution and delivery of Guarantee Supplement No. 2.

28.     The S&H Entities' execution and delivery of Guarantee Supplement No. 2 in favor of the Solidus Senior Lenders was a transfer or conveyance that was fraudulent as to the S&H Noteholders pursuant to Mass. General Laws c.109A, §6 or other applicable law.

29.     The lack of reasonably equivalent value or fair consideration received in exchange for Guarantee Supplement No. 2 renders Guarantee Supplement No. 2 null and void.

## AS AND FOR A FOURTH CAUSE OF ACTION
### FRAUDULENT TRANSFER

30.    Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs 1-29 above.

31.    The S&H Entities' execution and delivery of the DIP Guarantees was not in the ordinary course of the S&H Entities' business or business activities and occurred without the S&H Entities receiving reasonably equivalent value or fair consideration in exchange for the Guarantee obligations that they undertook.

32.    At the time that they executed and delivered the DIP Guarantees in or around December 2007 and January 2008, the S&H Entities believed or reasonably should have believed that, by execution and delivery thereof, they would incur debts beyond their ability to pay when such debts came due.

33.    The S&H Entities' execution and delivery of the DIP Guarantees in favor of the Solidus Senior Lenders was a transfer or conveyance that was fraudulent as to the S&H Noteholders pursuant to Mass. General Laws c.109A, §5(a)(2) or other applicable law.

## AS AND FOR A FIFTH CAUSE OF ACTION
### FRAUDULENT TRANSFER

34.    Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs 1-33 above.

35.    The S&H Entities' execution and delivery of the DIP Guarantees was not in the ordinary course of the S&H Entities' business or business activities and occurred without the S&H Entities receiving reasonably equivalent value or fair consideration in exchange for the Guarantee obligations that they undertook.

8

36.  Upon information and belief, the S&H Entities were not acting in good faith with respect to the S&H Noteholders when they executed and delivered the DIP Guarantees.

37.  On information and belief, the S&H Entities executed and delivered DIP Guarantees with an actual intent to hinder, delay, or defraud their present or future creditors.

38.  The S&H Entities' execution and delivery of the DIP Guarantees in favor of the Solidus Senior Lenders was a transfer or conveyance that was fraudulent as to the S&H Noteholders pursuant to Mass. General Laws c.109A, §5(a)(1) or other applicable law.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FRAUDULENT TRANSFER

39.  Plaintiffs incorporate herein by reference the allegations set forth in Paragraphs 1-38 above.

40.  Upon information and belief, the S&H Entities (a) provided DIP Guarantees and incurred the obligations thereunder without receiving reasonably equivalent value or fair consideration in exchange therefor and (b) either were then already insolvent by virtue of their prior execution and delivery of Guarantee Supplement No. 2 or were rendered insolvent as a result of their execution and delivery of the DIP Guarantees.

41.  The S&H Entities' execution and delivery of DIP Guarantees in favor of the Solidus Senior Lenders was a transfer or conveyance that was fraudulent as to the S&H Noteholders pursuant to Mass. General Laws c.109A, §6 or other applicable law.

42.  The lack of reasonably equivalent value or fair consideration received in exchange for the DIP Guarantees renders the DIP Guarantees null and void.

WHEREFORE, Plaintiffs the S&H Noteholders demand judgment as follows:

a. On the First Cause of Action, for entry of an order declaring that the S&H Entities' execution and delivery of Guarantee Supplement No. 2 was a fraudulent transfer

9

or conveyance pursuant to Mass. General Laws c.109A, §5(a)(2) or other applicable law, declaring that Guarantee Supplement No. 2 is null and void, and enjoining the S&H Entities from disposing of any property in satisfaction of any claims made under Guarantee Supplement No. 2;

b. On the Second Cause of Action, for entry of an order declaring that the S&H Entities' execution and delivery of Guarantee Supplement No. 2 was a fraudulent transfer or conveyance pursuant to Mass. General Laws c.109A, §5(a)(1) or other applicable law, declaring that Guarantee Supplement No. 2 is null and void, and enjoining the S&H Entities from disposing of any property in satisfaction of any claims made under Guarantee Supplement No. 2;

c. On the Third Cause of Action, for entry of an order declaring that the S&H Entities' execution and delivery of Guarantee Supplement No. 2 was a fraudulent transfer or conveyance pursuant to Mass. General Laws c.109A, §6 or other applicable law, declaring that Guarantee Supplement No. 2 is null and void, and enjoining the S&H Entities from disposing of any property in satisfaction of any claims made under Guarantee Supplement No. 2;

d. On the Fourth Cause of Action, for entry of an order declaring that the S&H Entities' execution and delivery of the DIP Guarantees was a fraudulent transfer or conveyance pursuant to Mass. General Laws c.109A, §5(a)(2) or other applicable law, declaring that the DIP Guarantees are null and void, and enjoining the S&H Entities from disposing of any property in satisfaction of any claims made under the DIP Guarantees;

e. On the Fifth Cause of Action, for entry of an order declaring that the S&H Entities' execution and delivery of the DIP Guarantees was a fraudulent transfer or conveyance pursuant to Mass. General Laws c.109A, §5(a)(1) or other applicable law, declaring that the DIP Guarantees are null and void, and enjoining the S&H Entities from disposing of any property in satisfaction of any claims made under the DIP Guarantees;

f. On the Sixth Cause of Action, for entry of an order declaring that the S&H Entities' execution and delivery of the DIP Guarantees was a fraudulent transfer or conveyance pursuant to Mass. General Laws c.109A, §6 or other applicable law, declaring that the DIP Guarantees are null and void, and enjoining the S&H Entities from disposing of any property in satisfaction of any claims made under the DIP Guarantees;

g. On the First, Second and Third Causes of Action, for entry of an order requiring the S&H Entities to account for all property transferred in satisfaction of any claims or demands made under or in connection with Guarantee Supplement No. 2;

h. On the Fourth, Fifth and Sixth Causes of Action, for entry of an order requiring the S&H Entities to account for all property transferred in satisfaction of any claims or demands made under or in connection with the DIP Guarantees; and

i. For such other relief as the Court deems just and meet, including without limitation attorneys' fees and costs of suit.

Dated: New York, New York
      February 19, 2008

Andrew T. Solomon
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
(212) 660-3000

*Counsel to Plaintiffs*

*Of counsel:*

Laura Steinberg
Pamela S. Holleman
Lesley M. Varghese
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800

11

## LIST OF EXHIBITS

A    Note Amendment and Assumption Agreement as of December 5, 2006

B    Guarantee dated as of February 28, 2006

C    Consent, Waiver and Amendment dated as of November 2, 2006

D    Supplement No. 2 dated as of June 15, 2007 to Guarantee dated as of February 28, 2006

# Exhibit A

## NOTE AMENDMENT AND ASSUMPTION AGREEMENT

This Note Amendment and Assumption Agreement dated as of December 5, 2006 (this "*Agreement*"), is by and among SOLIDUS NETWORKS, INC., a Delaware corporation ("*Parent*"), S&H GREENPOINTS, INC., a Delaware corporation (the "*Company*"), THE SPERRY AND HUTCHINSON COMPANY, INC., a New Jersey corporation (the "*Company Subsidiary*" and with Parent and the Company, the "*Companies*"), and the Noteholders listed on the signature page to this Agreement (the "*Noteholders*").

### RECITALS

A.    As of the date of this Agreement, the Noteholders own of record the Joint and Several Secured Notes of the Company and the Company Subsidiary (as amended to date, the "*Notes*") set forth on ANNEX I to this Agreement.

B.    Parent, Greenpoints Acquisition Corp., a Delaware corporation ("*MergerSub*"), the Company and Joel R. Carpenter, as the Stockholders' Representative, have entered into an Agreement and Plan of Merger and Reorganization (the "*Merger Agreement*") that provides, upon the terms and subject to the conditions thereof, for a business combination transaction in which MergerSub will be merged with and into the Company (the "*Merger*"). Capitalized terms used in this Agreement without definition shall have the meanings given therefor in the Merger Agreement.

C.    It is a condition to the consummation of the Merger that the Companies and the Noteholders enter into this Agreement and the Companies and the Noteholders have agreed to do so.

### AGREEMENT

The parties to this Agreement hereby agree as follows:

### SECTION I

### ASSUMPTION OF THE NOTES

1.1    **Assumption of Notes.** As of the Effective Time, Parent assumes, and agrees to pay and be liable, jointly and severally with the Company and the Company Subsidiary for, the Notes and all obligations of the Company and Company Subsidiary with respect to the Notes. The Companies agree that except as set forth in this Agreement, all terms and provisions of the Notes shall remain in full force and effect following the Effective Time and the Notes, as amended hereby, shall be and shall continue to be the legal, valid and binding joint and several obligations of the Companies, in accordance with their terms.

*Signature Page to Note Amendment and Assumption Agreement*

# SECTION II

## WAIVERS; AMENDMENTS TO THE NOTES AND RELATED DOCUMENTS

2.1    **Waivers.** The Noteholders acknowledge that immediately prior to the Effective Time the Company Notes payable to Ann B. Oliver, Trustee f/b/o Ann Oliver u/a 6/9/81, C. Hardy Oliver; Stratton Weaver and Shelby J. Weaver as Joint Tenants and McDonald Investments f/b/o Richard G. Smolev IRA (collectively, the *"Prepaid Noteholders"*) were prepaid by the Company in full. Each Noteholder acknowledges and agrees that it has waived any right it otherwise may have to receive a pro rata payment on its Notes as a result of such prepayment. Each Noteholder also acknowledges and agrees that the Note Prepayment required to be made to the holders of the Company Notes at the Effective Time pursuant to Section 1.11 of the Merger Agreement shall be reduced by the amount which the Prepaid Noteholders would have otherwise received from such Note Prepayment if their Company Notes had not been prepaid immediately prior to the Effective Time.

2.2    **Required Payments.**

(a)    At the Effective Time, upon payment by Parent of the Note Payment (reduced as contemplated by Section 2.1), each Noteholder shall apply its Pro Rata Share (defined below) of the Note Payment pro rata among its Notes, first against accrued and unpaid interest on its Notes and then to outstanding principal.

(b)    From and after the Effective Time, the "Due Date" as defined in each Note shall be the earlier of (a) the third anniversary of the Effective Time and (b) the date that Parent makes an initial public offering of any class of its capital stock. Notwithstanding the foregoing, if Parent has received cash of at least $100,000,000 through the sale of Parent capital stock or the issuance or incurrence of debt (or any combination thereof) after October 31, 2006, Parent shall pay to each Noteholder its Pro Rata Share of the Required Prepayment Amount, which payment shall be applied by each Noteholder pro rata among its Notes, first against accrued and unpaid interest on its Notes and then to outstanding principal.. As used in this Agreement, the *"Required Prepayment Amount"* is an amount equal to $15,000,000 less the amount of any Note Prepayment Setoff made in accordance with Section 6.3 of the Merger Agreement.

(c)    As used in this Section 2.1, a Noteholder's "Pro Rata Share" of any payment shall be equal to a fraction, the numerator of which shall be the aggregate outstanding principal amount of and accrued and unpaid interest on such Noteholder's Notes immediately prior to such payment and the denominator of which is the aggregate outstanding principal amount of and accrued and unpaid interest on all the Notes outstanding immediately prior to such payment.

2.3    **Amendment and Restatement of Security Agreement and Collateral Agency Agreement; Release of Certain Security Interests.** Each of the Company, the Company Subsidiary and the Noteholders agrees that as of the Effective Time the Amended and Restated Security Agreement (the *"Security Agreement"*) dated June 29, 2001 by and among the Company, the Company Subsidiary, xiNETix Inc. and U.S. Bank National Association (as

{B0550438; 6}

successor to State Street Bank and Trust Company (the *"Collateral Agent"*) shall be amended and restated in the form attached to this Agreement as Exhibit A (the *"New Security Agreement"*) and the Noteholders, contemporaneously with the execution of this Agreement shall execute and deliver to the Collateral Agent the Direction of Required Holders in the form as attached as Exhibit B. In addition, each of the Company, the Company Subsidiary and the Noteholders agrees that as of the Effective Time the Amended and Restated Collateral Agency Agreement dated June 29, 2001 by and among the Company, Company Subsidiary, xiNETix Inc., the Collateral Agent, and the Secured Parties (as defined therein) shall be amended and restated in the form attached to this Agreement as Exhibit C. The definition of "Collateral" in the New Security Agreement will include only all right, title and interest of the Company and the Company Subsidiary in, to and under the trademarks identified on Annex II (the *"Trademarks"*), the goodwill associated therewith, and all proceeds and products of the Trademarks, whether now owned or hereafter acquired and wherever located (collectively the *"Trademark Collateral"*). By this Agreement, as of the Effective Time each Noteholder (i) releases any claim or interest such Noteholder may have under its Notes or the Security Agreement to any Collateral (as defined in the Security Agreement) other than the Trademark Collateral (such released Collateral, the *"Released Collateral"*); (ii) authorizes the Company and/or the Collateral Agent to execute, file and record such UCC amendments and other releases necessary to reflect the release of the Released Collateral held by the Collateral Agent for the benefit of the Noteholders as may be requested by the Company (provided the Company shall provide the Noteholder and the Collateral Agent a copy of any UCC amendment or other release to be filed by the Company prior to any such filing); (iii) authorizes the Collateral Agent to return to the Company (A) the original share certificates of the Company Subsidiary held by Collateral Agent, together with the original irrevocable proxies and (B) any other items of Released Collateral in the possession of Collateral Agent, including without limitation, chattel paper, instruments, investment property, and letters of credit, and (iv) authorizes the Collateral Agent to execute and deliver to the Company such additional documents or instruments reasonably requested by the Company to evidence such release, including without limitation, notices of termination of any control agreements or landlord's waiver agreements, and re-assignments of trademarks, patents, and copyrights (other than the Trademarks).

2.4    **Subordination of Notes.** Each of the Noteholders acknowledges and agrees that as of the Effective Time and the effectiveness of this Agreement, each of the Notes will be subordinated to certain "Senior Secured Obligations" on the term set forth in the Subordination Agreement attached to the Merger Agreement as Exhibit J.

2.5    **Reporting Covenants.** From and after the Effective Time, the covenants of the Company under Section 12 of the Stock and Note Purchase Agreement dated as of February 20, 2001 and the Stock and Note Purchase Agreement dated June 29, 2001 and any other information or reporting covenants set forth in any agreement to which the Noteholder and the Company are parties prior to the date hereof, shall terminate. In lieu thereof, Parent agrees to provide each Noteholder:

(a)    As soon as practical, but in any event within 150 days after the end of Parent's fiscal year, an audited consolidated balance sheet of Parent as of the end of such fiscal

*Signature Page to Note Amendment and Assumption Agreement*

year, and the related audited consolidated statements of operations and stockholders' equity of Parent for the year then ended; and

**(b)**    As soon as practical, but in any event within 60 days after the end of each fiscal quarter of Parent, an unaudited consolidated balance sheet of Parent as of the end of such fiscal quarter, and the related unaudited consolidated statements of operations and stockholders' equity of Parent for the year through the end of such fiscal quarter.

## SECTION III
## GENERAL PROVISIONS

**3.1**    Notices.  Any notice, request, instruction or other document to be given under this Agreement by any party to the others shall be in writing and delivered personally or sent by express mail or equivalent over-night courier service, prepaid, or by facsimile:

**(a)**    if to a Company:

> Solidus Networks, Inc.
> 101 Second Street
> Suite 1500
> San Francisco, CA 94105
> Attention: General Counsel
> Facsimile: 415-281-2202

> with copies to:

> Cooley Godward. Kronish LLP
> 101 California Street, 5th Floor
> San Francisco, CA 94111
> Attention: Kenneth L. Guernsey
> Facsimile: 415-693-2222

**(b)**    if to a Noteholder, to the address set forth for such Noteholder on the signature page hereto;

**(c)**    or to such other persons or addresses as may be designated in writing by the party to receive such notice as provided above.

**3.2**    Headings.  The headings contained in this Agreement are included for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**3.3**    Counterparts.  This Agreement may be executed in any number of counterparts, all of which shall be considered one and the same agreement, and shall become effective when counterparts have been signed by each party to this Agreement and delivered to each other party. Copies of executed counterparts transmitted by telecopy, telefax or other electronic transmission

*Signature Page to Note Amendment and Assumption Agreement*

service shall be considered original executed counterparts for purposes of this Section, *provided that* receipt of copies of such counterparts is confirmed.

3.4  ·  3.4    **Governing Law.** This Agreement is to be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the Commonwealth of Massachusetts (without giving effect to any laws or rules relating to conflicts of laws that would cause the application of laws of any jurisdiction other than the Commonwealth of Massachusetts).

Each of Parent, the other Companies and the Noteholder has executed or has caused this Agreement to be duly executed  as of the date first written above.

*Signature Page to Note Amendment and Assumption Agreement*

{B0550438; 6}

The Companies:

SOLIDUS NETWORKS, INC.

By:_____

    Name:             Steve Zellinger

    Title:          General Counsel/Executive Vice President

THE SPERRY AND HUTCHINSON
COMPANY, INC.

By:_____

    Name:  Ron Pedersen

    Title:   President

S&H GREENPOINTS, INC.

By:_____

    Name:  Ron Pedersen

    Title:   President

*Signature Page to Note Amendment and Assumption Agreement*

The Companies:

SOLIDUS NETWORKS, INC.

By:_____
     Name:
     Title:

THE SPERRY AND HUTCHINSON
COMPANY, INC.

By:_____
     Name:  Ron Pedersen
     Title:   President

S&H GREENPOINTS, INC.

By:_____
     Name:  Ron Pedersen
     Title:   President

*Signature Page to Note Amendment and Assumption Agreement*

The Noteholders:

GRAHAM GUND

Signature

Address of Noteholder:

c/o Gund Partnership Inc.
47 Thorndike Street
Cambridge, MA 02141

WALTER BEINECKE, III

_____
Signature

Address of Noteholder:

3 Masconomo Street
Manchester, MA 01944

**S&H NOMINEE TRUST**

By: _Carl Novotny_
    Name: Carl Novotny
    Title: Trustee

Address of Noteholder:

30 Washington Street
Wellesley Hills, MA 02481

*Signature Page to Note Amendment and Assumption Agreement*

**J. STUART MOORE**

Signature

Address of Noteholder:

7 Gales Point
Manchester, MA  01944

*Signature Page to Note Amendment and Assumption Agreement*

EAGLIS ALTERNATIVE INVESTMENTS I,
LLC

Name:  J. Stuart Moore
Title:  Manager

Address of Noteholder:

7 Gales Point
Manchester, MA  01944

JENNIFER C. MCNEIL

_Jennifer C. McNeil_
Signature

Address of Noteholder:

c/o MAC Capital Partners, Inc.
2250 Hickory Road
Suite 450
Plymouth Meeting, PA  19462

*Signature Page to Note Amendment and Assumption Agreement*

GEOFFREY T. FREEMAN

_____
Signature

Address of Noteholder:

c/o MAC Capital Partners, Inc.
2250 Hickory Road
Suite 450
Plymouth Meeting, PA  19462

_Signature Page to Note Amendment and Assumption Agreement_

HENRY A. JORDAN, M.D.

Signature

Address of Noteholder:

c/o MAC Capital Partners, Inc,
2250 Hickory Road
Suite 450
Plymouth Meeting, PA  19462

*Signature Page to Note Amendment and Assumption Agreement*

ANNEX I

| Noteholder | Issue Date | Principal Amount |
|---|---|---|
| Graham Gund | February 20, 2001 | $2,060,186.65 |
| Eaglis Alternative Investments I, LLC | February 20, 2001 | 1,545,251.31 |
| LHC Corporation (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | February 20, 2001 | $1,724,777.69 |
| S&H Nominee Trust | February 20, 2001 | $413,206.59 |
| J. Stuart Moore | February 20, 2001 | $519,603.77 |
| Graham Gund | April 14, 2001 | $817,500 |
| Eaglis Alternative Investments I, LLC | April 14, 2001 | $613,250 |
| LHC Corporation (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | April 14, 2001 | $684,500 |
| S&H Nominee Trust | April 12, 2001 | $164,000 |
| J. Stuart Moore | April 14, 2001 | $206,250 |
| Graham Gund | May 18, 2001 | $899,250 |
| Eaglis Alternative Investments I, LLC | May 18, 2001 | $674,575 |
| J. Stuart Moore | May 18, 2001 | $226,875 |
| LHC Corporation (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | May 18, 2001 | $752,950 |
| S&H Nominee Trust | May 18, 2001 | $180,400 |
| Graham Gund | June 15, 2001 | $882,900 |
| Eaglis Alternative Investments I, LLC | June 15, 2001 | $662,310 |
| J. Stuart Moore | June 15, 2001 | $222,750 |
| LHC Corporation | June 15, 2001 | $739,260 |

| | | | |
|---|---|---|---|
| | (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | | |
| | S&H Nominee Trust | June 15, 2001 | $177,120 |
| | Graham Gund | July 19, 2001 | $915,000 |
| | Eaglis Alternative Investments I, LLC | July 19, 2001 | $686,840 |
| | J. Stuart Moore | July 19, 2001 | $231,000 |
| | LHC Corporation (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | July 19, 2001 | $766,640 |
| | S&H Nominee Trust | July 19, 2001 | $183,600 |
| | Graham Gund | August 15, 2001 | $817,500 |
| | Eaglis Alternative Investments I, LLC | August 15, 2001 | $613,250 |
| | J. Stuart Moore | August 15, 2001 | $206,250 |
| | LHC Corporation (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | August 15, 2001 | $684,500 |
| | S&H Nominee Trust | August 15, 2001 | $164,000 |
| | Graham Gund | October 15, 2001 | $490,500 |
| | Eaglis Alternative Investments I, LLC | October 15, 2001 | $367,950 |
| | J. Stuart Moore | October 15, 2001 | $123,750 |
| | LHC Corporation (Note endorsed 1/3 to each of Jennifer McNeil, Geoffrey T. Freeman and Henry A. Jordan, M.D.) | October 15, 2001 | $410,700 |
| | S&H Nominee Trust | October 15, 2001 | $98,400 |
| | Walter Beinecke, III | February 20, 2001 | $93,450 |

# ANNEX II

## TRADEMARKS

### (See Attached)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLICK & EARN | • | United States | REG | 76078666 | 2572938 | • 5/28/2002 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| GREEN POINTS | • | United States | REG | 75672229 | 2484258 | • 9/4/2 001 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| GREEN STAMPS | • | United States | REG | 76487057 | 2942629 | • 4/19/ 2005 | • 9 | The Sperry and Hutchinson Company Inc. |
| GREEN STAMPS | • | United States | REG SECT 2(F) | 75672231 | 2395091 | • 10/17 /2000 rene wal filed 10/13 /06 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| GREENPOINTS | • | United States | PUB INTENT TO USE | 76487058 | • | • | • 9 | The Sperry and Hutchinson Company Inc. |
| IDEABOOK | • | United States | RENEWED | 72249081 | 0832225 | • 7/18/ 1967 | • 1- 6 | The Sperry and Hutchinson Company Inc. |
| INFOPILOT | • | United States | REG | 75630884 | 2384909 | • 9/12/ 2000 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| INFOPILOT LEADING THE WAY TO CUSTOMER LOYALTY | • | United States | REG | 75630886 | 2384910 | • 9/12/ 2000 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S & H | • | United States | REG | 76487062 | 2949073 | • 5/10/ 2005 | • 9 | The Sperry and Hutchinson Company Inc. |
| S & H | • | United States | REG | 75672200 | 2397169 | • 10/24 /2000 • rene wal filed 10/13 /06 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| | • | United States | RENEWED | 72159620 | 0778858 | • 10/20 /1964 | • 3 5 | The Sperry and Hutchinson Company Inc. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| S & H GREEN SEALS | • | United States | REG | 73720066 | 1517413 | • | 12/20/1988 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S & H GREEN STAMPS | • | United States | RENEWED | 72159618 | 0778856 | • | 10/20/1964 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S & H GREEN STAMPS SPERRY AND HUTCHINSON DISCOUNT FOR CASH VALUE 10 MILLS | • | United States | REG PARTIAL SECT 2(F) | 73617979 | 1443517 | • | 6/16/1987 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S&H GREEN POINTS | • | United States | REG | 75672228 | 2484257 | • | 9/4/2001 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S&H GREEN STAMPS | • | United States | REG PARTIAL SECT 2(F) | 75672230 | 2395090 | • | 10/17/2000 renewal filed 10/13/06 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S&H GREEN STAMPS SPERRY AND HUTCHINSON | • | United States | REG PARTIAL SECT 2(F) | 73600195 | 1425096 | • | 1/13/1987 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| S&H GREEN STAMPS SPERRY AND HUTCHINSON 10 STAMPS VALUE 10 MILLS | • | United States | REG PARTIAL SECT 2(F) | 73600196 | 1436634 | • | 4/14/1987 | • 3 5 | The Sperry and Hutchinson Company Inc. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| S&H SOLUTIONS | • United States | REG | 76573245 | 2924845 | • 2/8/2 005 | • 3 5 | The Sperry and Hutchinson Company Inc. |
| SPERRY AND HUTCHINSON S&H DISCOUNT FOR CASH | • United States | EXPIRED | 72200789 | 0794932 | • 8/24/ 1965 | • 4 2 | The Sperry and Hutchinson Company Inc. |
| XINETIX xINETIx | • United States | REG | 75630340 | 2409960 | • 12/5/ 2000 | • 3 5 | The Sperry and Hutchinson Company, Inc. |

# Exhibit B

**GUARANTEE** dated as of February 28, 2006 (this "<u>Guarantee</u>"), by each of the Persons listed on <u>Schedule I</u> hereto (collectively, the "<u>Guarantors</u>"), for the benefit of the Holders (as defined in the Securities Purchase Agreement referred to below).

WHEREAS, Solidus Networks, Inc., a Delaware corporation (the "<u>Company</u>"), OZ Master Fund, Ltd, Denarius Touch, L.L.C., Plainfield Special Situations Masterfund Limited, Highbridge International LLC, Satellite Strategic Finance Partners, Ltd. and Satellite Strategic Finance Associates, LLC (each a "<u>Purchaser</u>" and together, the "<u>Purchasers</u>") and The Bank of New York, as agent for the Purchasers (in such capacity, the "<u>Agent</u>") are parties to the Amended and Restated Securities Purchase Agreement dated as of December 6, 2005 (as such agreement may be amended, modified, restated or supplemented from time to time, the "<u>Securities Purchase Agreement</u>").

WHEREAS, the Company is a member of an affiliated group of companies that includes the Guarantors.

WHEREAS, the Guarantors will derive substantial direct and indirect benefits from the issuance and sale of the Notes and Warrants (as defined in the Securities Purchase Agreement) by the Company to the Purchasers and are willing to execute and deliver this Guarantee in connection therewith;

NOW THEREFORE, the parties to this Guarantee hereby agree as set forth below.

Section 1.    <u>Defined Terms</u>.

Capitalized terms used herein and not otherwise defined shall have the respective meanings set forth in the Securities Purchase Agreement.

Section 2.    <u>Guarantee</u>.

Each Guarantor unconditionally guarantees, jointly with the other Guarantors and severally, as a primary obligor and not merely as a surety, the Obligations (including interest accruing during the pendency of any Proceeding regardless of whether allowed or allowable in such Proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise (the "<u>Guaranteed Obligations</u>"). Each Guarantor further agrees that the Guaranteed Obligations may be extended or renewed in accordance with the terms of the Securities Purchase Agreement, in whole or in part, without notice to or further assent from it, and that it will remain bound upon its guarantee hereunder notwithstanding any extension or renewal of any Guaranteed Obligation. For purposes hereof, the term "<u>Proceeding</u>" shall mean any legal, administrative or arbitration action, suit, complaint, charge, hearing, inquiry, investigation or proceeding.

**Section 3.**    **Guaranteed Obligations Not Waived; No Discharge or Diminishment of Guarantee.**

To the fullest extent permitted by applicable law, each Guarantor waives presentment to, demand of payment from and protest to the Company of any of the Guaranteed Obligations, and also waives notice of acceptance of its guarantee and notice of protest for nonpayment. To the fullest extent permitted by applicable law, the obligations of each Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of the Guaranteed Obligations), and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations or otherwise. Without limiting the generality of the foregoing, the obligations of each Guarantor hereunder shall not be discharged or impaired or otherwise affected by (a) the failure of the Agent or any Holder to assert any claim or demand or to enforce or exercise any right or remedy against the Company or any other Guarantor under the provisions of the Securities Purchase Agreement, any other Transaction Document or any other agreement; (b) any default, failure or delay, willful or otherwise, in the performance of the Guaranteed Obligations; or (c) any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or that would otherwise operate as a discharge of each Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Guaranteed Obligations).

**Section 4.**    **Guarantee of Payment.**

Each Guarantor further agrees that its guarantee constitutes a guarantee of payment when due and not of collection, and waives any right to require that any resort be had by the Agent or any Holder to any security held for payment of the Guaranteed Obligations or to any balance of any deposit account or credit on the books of the Agent or any Holder in favor of the Company or any other Person.

**Section 5.**    **Defenses of the Company Waived.**

To the fullest extent permitted by applicable law, each Guarantor waives any defense based on or arising out of any defense of the Company or the unenforceability of the Guaranteed Obligations or any part thereof from any cause, or the cessation from any cause of the liability of the Company, other than the final and indefeasible payment in full in cash of the Guaranteed Obligations. The Agent or any Holder may, at their election, compromise or adjust any part of the Guaranteed Obligations, make any other accommodation with the Company or any other guarantor or exercise any other right or remedy available to them against the Company or any other guarantor, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Guaranteed Obligations have been fully and indefeasibly paid in cash. To the fullest extent permitted by applicable law, each Guarantor waives any defense arising out of any such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of such Guarantor against the Company or any guarantor, as the case may be, or any security.

In accordance with Section 2856 of the California Civil Code, each Guarantor waives any and all rights and defenses available to it by reason of Sections 2787 to 2855, inclusive, of

the California Civil Code. No other provision of this Guaranty shall be construed as limiting the generality of any of the covenants and waivers set forth in this paragraph. As provided below, this Guaranty shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York, without regard to conflicts of laws principles. This paragraph is included solely out of an abundance of caution, and shall not be construed to mean that any of the above-referenced provisions of California law are in any way applicable to this Guaranty or to any of the Guarantied Obligations.

### Section 6.     Agreement to Pay; Subrogation.

In furtherance of the foregoing and not in limitation of any other right that the Agent or any Holder have at law or in equity against any Guarantor by virtue hereof, upon the failure of the Company to pay any Guaranteed Obligation when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise, each Guarantor hereby promises to and will forthwith pay, or cause to be paid, to such Person as the Holders shall designate in cash the amount of such unpaid Guaranteed Obligations. Upon payment by any Guarantor of any sums to the Agent as provided above, all rights of such Guarantor against the Company arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise (including, without limitation, under California Civil Code Section 2847, 2848 or 2849, to the extent applicable) shall in all respects be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all the Guaranteed Obligations. In addition, any Indebtedness of the Company now or hereafter held by any Guarantor is hereby subordinated in right of payment to the prior payment in full of the Guaranteed Obligations. If any amount shall erroneously be paid to any Guarantor on account of (a) such subrogation, contribution, reimbursement, indemnity or similar right or (b) any such Indebtedness of the Company, such amount shall be held in trust for the benefit of the Holders and shall forthwith be turned over to such Person as the Agent shall designate in the exact form received by such Guarantor (duly endorsed by such Guarantor to such designated Person, if required) to be credited against the payment of the Guaranteed Obligations, whether matured or unmatured, in accordance with the terms of the Transaction Documents.

### Section 7.     Information.

Each Guarantor assumes all responsibility for being, and keeping itself, informed of the Company's financial condition and assets, and of all other circumstances bearing upon the risk of non-payment of the Guaranteed Obligations and the nature, scope and extent of the risks that such Guarantor assumes and incurs hereunder, and agrees that none of Agent or the Holders will have any duty to advise any of the Guarantors of information known to it or any of them regarding such circumstances or risks.

### Section 8.     Additional Guarantors.

The Company is required to cause each direct or indirect Subsidiary (as defined in the Securities Purchase Agreement) of the Company, including any Subsidiary that was not in existence on the date of the Securities Purchase Agreement, to execute and deliver to the Holders a supplement to this Guarantee in the form of Exhibit A attached hereto. Upon execution and delivery of such supplement, such Subsidiary shall become a Guarantor hereunder with the same

force and effect as if originally named as a Guarantor herein. The execution and delivery of any instrument adding an additional Guarantor as a party to this Guarantee shall not require the consent of any other Guarantor hereunder. The rights and obligations of each Guarantor hereunder shall remain in full force and effect notwithstanding the addition of any new Guarantor as a party to this Guarantee.

### Section 9.    Termination.

The guarantees made hereunder (a) shall terminate when all the Guaranteed Obligations have been indefeasibly paid in full in cash and (b) shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Guaranteed Obligation is rescinded or must otherwise be restored by the Agent or any Holder upon the bankruptcy or reorganization of the Company or any Guarantor.

### Section 10.    Assignments: Several Agreements.

(a)    Whenever in this Guarantee any of the parties hereto is referred to, such reference shall be deemed to include the successors and permitted assigns of such party; and all covenants, promises and agreements by or on behalf of the Guarantors that are contained in this Guarantee shall bind and inure to the benefit of each party hereto and their respective successors and permitted assigns, except that no Guarantor shall have the right to assign its rights or obligations hereunder without the prior written consent of the Required Holders.

(b)    This Guarantee shall be construed as a separate agreement with respect to each Guarantor and may be amended, modified, supplemented, waived or released with respect to any Guarantor without the approval of any other Guarantor and without affecting the obligations of any other Guarantor hereunder.

### Section 11.    Waivers: Amendment.

(a)    No failure or delay of the Agent or any Holder in exercising any power or right in this Guarantee shall operate as a waiver hereof or thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such right or power, preclude any other or further exercise of any other right or power. No waiver of any provision of this Guarantee or consent to any departure by the Guarantors therefrom shall in any event be effective unless the same shall be authorized as provided for in Section 11(b), and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on the Guarantors in any case shall entitle the Guarantors to any other or further notice or demand in similar or other circumstances.

(b)    Neither this Guarantee nor any provision hereof may be waived, amended, supplemented, restated or otherwise modified except pursuant to a written agreement entered into between the Guarantors with respect to which such waiver, amendment, supplement, restatement or modification relates and the Required Holders (except as otherwise provided in the Securities Purchase Agreement).

-4-

NY1:1616278.5

**Section 12.    Governing Law; Jurisdiction and Venue.**

(a)    THIS GUARANTEE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND THEREUNDER SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK.  ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS GUARANTEE MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK OR OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS GUARANTEE, EACH GUARANTOR HEREBY IRREVOCABLY ACCEPTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.  EACH GUARANTOR FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO EACH GUARANTOR AT ITS ADDRESS SET FORTH IN THE SECURITY AGREEMENT, SUCH SERVICE TO BECOME EFFECTIVE 30 DAYS AFTER SUCH MAILING.  NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE AGENT OR ANY HOLDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST EACH GUARANTOR IN ANY OTHER JURISDICTION.

(b)    EACH GUARANTOR HEREBY IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY OF THE AFORESAID ACTIONS OR PROCEEDINGS ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTEE BROUGHT IN THE COURTS REFERRED TO IN CLAUSE (a) ABOVE AND HEREBY FURTHER IRREVOCABLY WAIVES AND AGREES NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**Section 13.    Waiver of Jury Trial.**

EACH GUARANTOR HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTEE.

**Section 14.    Notices.**

All communications and notices hereunder shall be in writing and given as provided in Section 13.3 of the Securities Purchase Agreement.  Each Guarantor acknowledges and agrees that all communications and notices hereunder to such Guarantor shall be given to it in care of the Company, at the address specified for the Company in the Securities Purchase Agreement.

**Section 15.    Survival of Agreement.**

(a)    All agreements and covenants contained herein or made in writing by or on behalf of a Guarantor in connection with the transactions contemplated hereby shall survive

- 5 -

the execution and delivery of this Guarantee without limit. No termination or cancellation (regardless of cause or procedure) of this Guarantee shall in any way affect or impair the powers, obligations, duties, rights and liabilities of the parties hereto in any way with respect to any transaction or event occurring prior to such termination or cancellation, or any of the representations contained in this Guarantee and the other Transaction Documents.

(b)    Each Guarantor further agrees that to the extent such Guarantor makes a payment or payments to the Agent or Holders under this Guarantee, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy, insolvency or similar state or United States federal law, then, to the extent of such payment or repayment, the obligation or part thereof intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been received by the Agent.

### Section 16.    Severability.

Whenever possible, each provision of this Guarantee will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guarantee is held to be invalid, illegal or unenforceable in any respect under any applicable law in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, and such invalid, void or otherwise unenforceable provisions shall be null and void. It is the intent of the parties, however, that any invalid, void or otherwise unenforceable provisions be automatically replaced by other provisions which are as similar as possible in terms to such invalid, void or otherwise unenforceable provisions but are valid and enforceable to the fullest extent permitted by applicable law.

### Section 17.    Counterparts; Facsimile Execution.

This Guarantee may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Guarantee that is delivered by facsimile shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Guarantee.

### Section 18.    Headings.

Section headings used herein are for convenience of reference only and are not to affect the construction of, or to be taken into consideration in interpreting, this Guarantee.

### Section 19.    Limitation on Amount Guarantied; Contribution by Guarantors.

(a)    Anything contained in this Guarantee to the contrary notwithstanding, if any Fraudulent Transfer Law (as hereinafter defined) is determined by a court of competent jurisdiction to be applicable to the obligations of any Guarantor under this Guarantee, such obligations of such Guarantor hereunder shall be limited to a maximum aggregate amount equal

to the largest amount that would not render its obligations hereunder subject to avoidance as a fraudulent transfer or conveyance under Section 548 of Title 11 of the United States Code or any applicable provisions of comparable state or foreign law (collectively, the "Fraudulent Transfer Laws"), in each case after giving effect to all other liabilities of such Guarantor, contingent or otherwise, that are relevant under the Fraudulent Transfer Laws (specifically excluding, however, any liabilities of such Guarantor in respect of intercompany indebtedness to the Company, its subsidiaries or other affiliates of the Company to the extent that such indebtedness would be discharged in an amount equal to the amount paid by such Guarantor hereunder) and after giving effect as assets to the value (as determined under the applicable provisions of the Fraudulent Transfer Laws) of any rights to subrogation, reimbursement, indemnification or contribution of such Guarantor pursuant to applicable law or pursuant to the terms of any agreement (including without limitation any such right of contribution under Section 19(b)).

(b)    Guarantors under this Guarantee together desire to allocate among themselves, in a fair and equitable manner, their obligations arising under this Guarantee. Accordingly, in the event any payment or distribution is made on any date by any Guarantor under this Guarantee (a "Funding Guarantor") that exceeds its Fair Share (as defined below) as of such date, that Funding Guarantor shall be entitled to a contribution from each of the other Guarantors in the amount of such other Guarantor's Fair Share Shortfall (as defined below) as of such date, with the result that all such contributions will cause each Guarantor's Aggregate Payments (as defined below) to equal its Fair Share as of such date. "Fair Share" means, with respect to a Guarantor as of any date of determination, an amount equal to (i) the ratio of (x) the Adjusted Maximum Amount (as defined below) with respect to such Guarantor to (y) the aggregate of the Adjusted Maximum Amounts with respect to all Guarantors, *multiplied by* (ii) the aggregate amount paid or distributed on or before such date by all Funding Guarantors under this Guarantee in respect of the obligations guarantied. "Fair Share Shortfall" means, with respect to a Guarantor as of any date of determination, the excess, if any, of the Fair Share of such Guarantor over the Aggregate Payments of such Guarantor. "Adjusted Maximum Amount" means, with respect to a Guarantor as of any date of determination, the maximum aggregate amount of the obligations of such Guarantor under this Guarantee, determined as of such date in accordance with Section 19(a); *provided that*, solely for purposes of calculating the "Adjusted Maximum Amount" with respect to any Guarantor for purposes of this Section 19(b), any assets or liabilities of such Guarantor arising by virtue of any rights to subrogation, reimbursement or indemnification or any rights to or obligations of contribution hereunder shall not be considered as assets or liabilities of such Guarantor. "Aggregate Payments" means, with respect to a Guarantor as of any date of determination, an amount equal to (i) the aggregate amount of all payments and distributions made on or before such date by such Guarantor in respect of this Guarantee (including, without limitation, in respect of this Section 19(b)) *minus*, (ii) the aggregate amount of all payments received on or before such date by such Guarantor from the other Guarantors as contributions under this Section 19(b). The amounts payable as contributions hereunder shall be determined as of the date on which the related payment or distribution is made by the applicable Funding Guarantor. The allocation among Guarantors of their obligations as set forth in this Section 19(b) shall not be construed in any way to limit the liability of any Guarantor hereunder.

\*\*\*\*\*\*\*

IN WITNESS WHEREOF, the parties hereto have duly executed this Guarantee as of the day and year first above written.

CHECK ELECT INC.

By: _____
Name: Steve Zelinger
Title: General Counsel

INDIVOS CORPORATION

By: _____
Name: John Rogers
Title: President

PAY BY TOUCH PAYMENT SOLUTIONS, LLC

By: _____
Name: Steve Zelinger
Title: General Counsel

SEVEN ACQUISITION SUB, LLC

By: _____
Name: Steve Zelinger
Title: General Counsel

LOYALTY ACQUISITION SUB, LLC

By: _____
Name: Steve Zelinger
Title: General Counsel

PAY BY TOUCH PROCESSING, INC.

By: _____

Name: Steve Zelinger

Title: General Counsel

PAY BY TOUCH CHECK CASHING, INC.

By: _____

Name: Steve Zelinger

Title: General Counsel

<u>Schedule I</u>

<u>Guarantors</u>

1. Indivos Corporation, a Delaware corporation

2. Pay By Touch Payment Solutions, LLC, a Delaware limited liability company

3. Check Elect Inc., a Wisconsin corporation

4. Pay By Touch Processing, Inc., a Delaware corporation

5. Loyalty Acquisition Sub, LLC, a Delaware limited liability company

6. Seven Acquisition Sub, LLC, a Delaware limited liability company

7. Pay By Touch Cash Checking, Inc., a Delaware corporation

SUPPLEMENT NO. [     ] dated as of [                    ] (this "Supplement"), to the Guarantee dated as of February __, 2006, by each of the Guarantors, for the benefit of the Holders (as defined in the Securities Purchase Agreement referred to below).

WHEREAS, Solidus Networks, Inc., a Delaware corporation (the "Company"), OZ Master Fund, Ltd, Denarius Touch, L.L.C., Plainfield Special Situations Masterfund Limited, Highbridge International LLC, Satellite Strategic Finance Partners, Ltd. and Satellite Strategic Finance Associates, LLC (each a "Purchaser" and together, the "Purchasers") and The Bank of New York, as agent for the Purchasers (in such capacity, the "Agent") are parties to the Amended and Restated Securities Purchase Agreement dated as of December 6, 2005 (as such agreement may be amended, modified, restated or supplemented from time to time, the "Securities Purchase Agreement").

WHEREAS, the Guarantors have entered into the Guarantee dated as of February __, 2006, as amended or supplemented or otherwise modified through the date hereof (as such guarantee may be further amended, restated or otherwise modified from time to time, the "Guarantee").

WHEREAS, Section 8 of the Guarantee provides that additional Persons may become Guarantors under the Guarantee by execution and delivery of an instrument substantially in the form of this Supplement.

WHEREAS, the undersigned (the "New Guarantor") is executing this Supplement in accordance with the requirements of the Guarantee and otherwise to become a Guarantor under the Guarantee.

NOW THEREFORE, the parties to this Agreement hereby agree as set forth below.

Section 1.        In accordance with Section 8 of the Guarantee, the New Guarantor by its signature below becomes a Guarantor under the Guarantee with the same force and effect as if originally named therein as a Guarantor and the New Guarantor hereby agrees to all the terms and provisions of the Guarantee applicable to it as a Guarantor thereunder. Each reference to a "Guarantor" in the Guarantee shall be deemed to include the New Guarantor. The Guarantee is hereby incorporated herein by reference.

Section 2.        The New Guarantor represents and warrants to the Holders and the Agent that (a) the New Guarantor is a [                    ][1] duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization; (b) this Supplement has been duly authorized, executed and delivered by it; and (c) this Supplement constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms except as

---

[1]    *Type of entity.*

limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting enforcement of creditors' rights and general principles of equity that restrict the availability of equitable remedies.

Section 3.    This Supplement shall become effective when the Agent shall have received a counterpart of this Supplement that bears the signature of the New Guarantor. Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Supplement.

Section 4.    Except as expressly supplemented hereby, the Guarantee shall remain in full force and effect.

Section 5.    ALL QUESTIONS CONCERNING THE CONSTRUCTION, INTERPRETATION AND VALIDITY OF THIS SUPPLEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE DOMESTIC LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF NEW YORK.

Section 6.    All communications and notices hereunder shall be in writing and given as provided in Section 14 of the Guarantee. The New Guarantor acknowledges and agrees that all communications and notices hereunder to the New Guarantor shall be given to it in care of the Company, at the address specified for the Company in the Securities Purchase Agreement.

*******

IN WITNESS WHEREOF, the New Guarantor has duly executed this Supplement to the Guarantee as of the day and year first above written.

[                                                                    ]

By:_____

    Name:

    Title:

SUPPLEMENT NO. 1 dated as
of May 16, 2006 (this "Supplement"), to the
Guarantee dated as of February 28, 2006, by each of
the guarantors listed on Schedule I thereto (the
"Guarantors"), for the benefit of the Holders (as
defined in the Securities Purchase Agreement
referred to below).

WHEREAS, Solidus Networks, Inc., a Delaware corporation (the "Company"),
OZ Master Fund, Ltd., Denarius Touch, L.L.C., Plainfield Special Situations Masterfund Limited,
Highbridge International LLC, Satellite Strategic Finance Partners, Ltd. and Satellite Strategic
Finance Associates, LLC (each a "Purchaser" and together, the "Purchasers") and The Bank of
New York, as agent for the Purchasers (in such capacity, the "Agent") are parties to the
Amended and Restated Securities Purchase Agreement dated as of December 6, 2005 (as such
agreement may be amended, modified, restated or supplemented from time to time, the
"Securities Purchase Agreement").

WHEREAS, the Guarantors have entered into the Guarantee dated as of February
28, 2006, as amended or supplemented or otherwise modified through the date hereof (as such
guarantee may be further amended, restated or otherwise modified from time to time, the
"Guarantee").

WHEREAS, Section 8 of the Guarantee provides that additional Persons may
become Guarantors under the Guarantee by execution and delivery of an instrument substantially
in the form of this Supplement.

WHEREAS, the undersigned (the "New Guarantors") are executing this
Supplement in accordance with the requirements of the Guarantee and otherwise to become
Guarantors under the Guarantee.

NOW THEREFORE, the parties to this Agreement hereby agree as set forth
below.

Section 1.    In accordance with Section 8 of the Guarantee, the New
Guarantors by their signature below become Guarantors under the Guarantee with the same force
and effect as if originally named therein as Guarantors and the New Guarantors hereby agree to
all the terms and provisions of the Guarantee applicable to them as Guarantors thereunder. Each
reference to a "Guarantor" in the Guarantee shall be deemed to include the New Guarantors.
The Guarantee is hereby incorporated herein by reference.

Section 2.    The New Guarantors represent and warrant to the Holders and the
Agent that (a) the New Guarantors are duly organized, validly existing and in good standing
under the laws of the jurisdiction of their organization; (b) this Supplement has been duly
authorized, executed and delivered by them; and (c) this Supplement constitutes a legal, valid
and binding obligation, enforceable against them in accordance with its terms except as limited
by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general

application affecting enforcement of creditors' rights and general principles of equity that restrict the availability of equitable remedies.

Section 3.    This Supplement shall become effective when the Agent shall have received a counterpart of this Supplement that bears the signature of the New Guarantors. Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Supplement.

Section 4.    Except as expressly supplemented hereby, the Guarantee shall remain in full force and effect.

Section 5.    ALL QUESTIONS CONCERNING THE CONSTRUCTION, INTERPRETATION AND VALIDITY OF THIS SUPPLEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE DOMESTIC LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF NEW YORK.

Section 6.    All communications and notices hereunder shall be in writing and given as provided in Section 14 of the Guarantee. The New Guarantors acknowledge and agree that all communications and notices hereunder to the New Guarantors shall be given to them in care of the Company, at the address specified for the Company in the Securities Purchase Agreement.

*******

IN WITNESS WHEREOF, the New Guarantors have duly executed this Supplement to the Guarantee as of the day and year first above written.

MAVERICK INTERNATIONAL PROCESSING SERVICES, INC., as New Guarantor

By: _____
Name: Steve Zelinger
Title: General Counsel and Secretary

CARDSYSTEMS PAYMENT SOLUTIONS, LLC, as New Guarantor

By: PAY BY TOUCH PROCESSING, INC., Its sole member

By: _____
Name: Steve Zelinger
Title: General Counsel and Secretary

# Exhibit C

Consent, Waiver and Amendment (this "Consent"), dated as of November 2, 2006, by and among the Holders and Solidus Networks, Inc. (the "Company") in respect of the AMENDED AND RESTATED SECURITIES PURCHASE AGREEMENT dated as of December 6, 2005, by and among the Company and the Purchasers set forth therein (as amended or otherwise modified through the date hereof, the "Securities Purchase Agreement").

WHEREAS, pursuant to Section 8.1(a) of the Securities Purchase Agreement, the Company is required to provide certain financial reports to the Agent within 45 days following the end of each fiscal month;

WHEREAS, the Holders have agreed to waive any default arising from the Company's failure to furnish to the Bank of New York, as agent for the Purchasers, audited financial statements of the Company and its Consolidated Subsidiaries as of and for the year ended December 31, 2005 (the "2005 Financial Statements") pursuant to Section 8.1(c) of the Securities Purchase Agreement, provided that the Company furnishes such audited financial statements by October 31, 2006 (the "2005 Delivery Date");

WHEREAS, pursuant to Section 8.8 of the Securities Purchase Agreement, the Company is required, upon the reasonable request of the Collateral Agent, to execute and deliver and cause each depository institution, securities intermediary, commodity intermediary or issuer or nominated party under a letter of credit to execute and deliver a collateral control agreement with respect to any Deposit Account, Securities Account or Commodity Account or Letter-of-Credit Right (as such terms are defined in the Amended Security Agreement) in or to which the Company has any right or interest in form and substance reasonably acceptable to the Required Holders and the Agent;

WHEREAS, pursuant to Section 9.1 of the Securities Purchase Agreement, neither the Company nor its subsidiaries may create, incur, assume or permit to exist any Liens upon or with respect to the Collateral, other than as set forth in Section 9.1;

WHEREAS, pursuant to Section 9.2 of the Securities Purchase Agreement, neither the Company nor its subsidiaries may enter into any transaction of merger or consolidation or acquire the property of another entity outside the ordinary course of business other than pursuant to Permitted Acquisitions or as otherwise set forth in Section 9.2;

WHEREAS, pursuant to Section 9.2 of the Securities Purchase Agreement, neither the Company nor its subsidiaries may purchase or otherwise acquire any part of the property (other than purchases or other acquisitions of inventory, materials, equipment and intangible assets in the ordinary course of business) of any Person other than as forth in Section 9.2;

WHEREAS, pursuant to Section 9.4 of the Securities Purchase Agreement, neither the Company nor its subsidiaries may contract, create, incur, assume or suffer or permit to exist any Indebtedness other than as set forth in Section 9.4;

WHEREAS, pursuant to Section 9.5 of the Securities Purchase Agreement, neither the Company nor its subsidiaries may make advances or capital contributions to any other Person other than as set forth in Section 9.5;

WHEREAS, the Company has proposed to enter into a merger agreement (together with all schedules and exhibits attached thereto, the "S&H Merger Agreement") among the Company, Greenpoints Acquisition Corp., Joel R. Carpenter and S&H Greenpoints, Inc. ("S&H"), in substantially the form attached hereto as Exhibit A (the "S&H Acquisition");

WHEREAS, the S&H Acquisition contemplates the Company (i) assuming Indebtedness of S&H in an aggregate amount of less than $24,000,000 in the form of notes attached hereto as Exhibit B held by the persons set forth on Annex I (the "S&H Notes"), and (ii) incurring a Lien on the trademarks listed on Annex II held by S&H and acquired by a subsidiary of the Company in connection with the S&H Acquisition, to secure obligations under the S&H Notes (the "S&H Lien");

WHEREAS, the Company has proposed to enter into an asset purchase agreement (together with all schedules and exhibits attached thereto, the "PayNet Asset Purchase Agreement") by and between the Company, Camelot Systems, Inc., d/b/a Paynet Transaction Services ("PayNet"), Kristy Sherman and Kevin Colaco, in substantially the form attached hereto as Exhibit D (the "PayNet Acquisition");

WHEREAS, the Company has entered into a letter of intent with CashReady, LLC ("CashReady"), Baki Arbia and Harry Wilson, in substantially the form attached hereto as Exhibit E (the "CashReady LOI");

WHEREAS, the parties may amend Schedule 9.2(h) of the Securities Purchase Agreement to add Permitted Acquisitions with the consent of the Required Holders;

WHEREAS, pursuant to Section 9.3 of the Securities Purchase Agreement, neither the Company nor its subsidiaries may redeem, purchase or otherwise acquire, directly or indirectly, for consideration any shares of any class of its capital stock of any Person other than as otherwise set forth in Section 9.3;

WHEREAS, the Company has proposed to repurchase from WinWin Gaming, Inc. ("WinWin") up to 400,000 of its shares of the Company's Series C Preferred Stock currently held by WinWin at a purchase price of up to $5 per share (the "WinWin Repurchase");

WHEREAS, the Holders have requested that the Company amend Section 3.6(a) of the Securities Purchase Agreement to expand the type of financing that would give rise to an obligation by the Company to prepay a portion of the Secured Notes;

WHEREAS, the Company has requested that the Holders (i) waive any defaults that may have arisen under Section 8.1(a) of the Securities Purchase Agreement from the Company's failure to provide monthly financial reports to the Agent in a timely fashion, (ii) waive any defaults that may have arisen under Section 8.8 of the Securities Purchase Agreement

NY1:1665884.12Z

from the Company's failure to have executed and delivered and caused each depository institution, securities intermediary, commodity intermediary or issuer or nominated party under a letter of credit to have executed and delivered a collateral control agreement with respect to any Deposit Account, Securities Account or Commodity Account or Letter-of-Credit Right in or to which the Company has any right or interest in form and substance reasonably acceptable to the Required Holders and the Agent, (iii) amend Schedule 9.2(b) of the Securities Purchase Agreement to add the S&H Acquisition and the PayNet Acquisition, (iv) consent to the S&H Acquisition and the PayNet Acquisition, the assumption of the S&H Notes and the incurrence of the S&H Lien, (v) effect a waiver of Sections 9.2 and 9.5 of the Securities Purchase Agreement to the extent that any default may have arisen from the payment of $100,000 to CashReady made pursuant to the CashReady LOI (the "CashReady LOI Payment"), (vi) consent to the WinWin Repurchase (subject to the conditions set forth in Section 2(c) below), (vii) amend Sections 9.2(a)(i) and (ii) of the Securities Purchase Agreement to increase the amount of Capital Expenditures that the Company may allocate in its sole discretion, (viii) amend Article 12 of the Securities Purchase Agreement to add or amend the definitions of certain terms used in the Securities Purchase Agreement, (ix) waive any defaults that may have arisen under Section 9.2(a)(i) of the Securities Purchase Agreement provided that the Company has complied with Section 9.2(a)(i) as amended hereby; (x) waive any defaults that may have arisen under Section 8.1(b)(iii) of the Securities Purchase Agreement from the Company's failure to provide quarterly compliance certificates to the Agent in a timely fashion; and (xi) waive any defaults that may have arisen under Section 8.3(b)(iii), 8.3(b)(iv) and 8.3(b)(v) of the Securities Purchase Agreement arising from the Company's failure to maintain insurance coverage in compliance with such sections; and

WHEREAS, the Holders are willing to grant such consent and waiver and effect such amendments, but only to the extent provided in this Consent and in reliance on the representations, warranties and covenants contained herein;

ACCORDINGLY, in consideration of the premises and the mutual agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

Section 1.    Defined Terms.

Capitalized terms used and not otherwise defined in this Consent shall have the meanings given to them in the Securities Purchase Agreement.

Section 2.    Consent.

(a)    The Holders hereby consent to (x) the Company's entry into the S&H Acquisition on substantially the terms set forth in the S&H Merger Agreement, (y) the Company's assumption of the S&H Notes and (z) the Company's incurrence of the S&H Lien, in each case on the terms set forth in the S&H Merger Agreement and S&H Notes; provided, that the Company shall not assume the S&H Notes nor incur the S&H Lien unless the Company and the holders of the S&H Notes have entered into a subordination agreement in substantially the form set forth on Exhibit C hereto (the "S&H Subordination Agreement"); provided, further, that unless such subordination agreement has been entered into on or prior to 105 days from the date hereof, the consent of the Holders with respect to clauses (y) and (z) shall be null and void ab initio. Notwithstanding anything to the contrary above or otherwise herein:

(i)     the S&H Notes shall not be secured by any liens or security interests other than the S&H Lien; and

(ii)    the S&H Lien shall automatically be released upon the payment in full of the principal and accrued interest of the S&H Notes.

(b)     The Holders hereby consent to the Company's entry into the PayNet Acquisition on substantially the terms set forth in the PayNet Asset Purchase Agreement.

(c).    The Holders hereby consent to the Company's entry into the CashReady LOI and its initial payment thereunder on the terms set forth in the CashReady LOI; provided, that notwithstanding anything to the contrary, this shall not constitute a consent to the transactions contemplated by the CashReady LOI.

(d)     [Intentionally omitted.]

(e)     The Holders hereby consent to the WinWin Repurchase, but solely to the extent that (i) the Company receives from St. Cloud Capital, after October 31, 2006 and on or prior to such repurchase, at least as much cash as the Company uses to fund the WinWin Repurchase (the "Cash Consideration") and (ii) the Company uses the Cash Consideration (and only the Cash Consideration), up to a maximum of $2,000,000, to effect the WinWin Repurchase; provided, that unless the Company satisfies clauses (i) and (ii) above, this Consent under clause (e) shall be null and void ab initio.

Section 3.      Conditions Subsequent.

(a)     The Company hereby acknowledges and agrees that, concurrently with the closing of the S&H Acquisition:

(i)     the Company, S&H, The Sperry and Hutchinson Company, Inc. ("S&H Subsidiary"), the Holders and the noteholders set forth on Annex I hereto (the "S&H Noteholders") will enter into the S&H Subordination Agreement, pursuant to which the payment obligations of the Company, S&H and S&H Subsidiary under such S&H Notes will be subordinated to the payment of the Obligations.

(ii) (A) the Company shall cause each of S&H and S&H Subsidiary to become a "Grantor" under the Amended Security Agreement and a "Guarantor" under the Guarantee dated as of February 28, 2006 by each of the persons listed on Schedule I thereto for the benefit of the Holders (the "Guarantee") and (B) all of the assets of S&H and S&H Subsidiary and all equity securities of S&H and S&H Subsidiary shall thereafter be "Collateral" as such term is defined in the Amended Security Agreement.

(b) The Company hereby acknowledges and agrees that the Company shall obtain on or before December 15, 2006 the written consents (the "Written Consents") required to effectuate the amendment to Section 1.1 of the Amended and Restated Registration Rights Agreement dated as of January 6, 2006 (as amended or otherwise modified through the date hereof, the "Registration Rights Agreement"), as contemplated by Section 16 of the Amendment dated as of September 20, 2006 by and among the Holders, the Company and the Agent; provided, that unless the Company shall obtain the Written Consents by December 15, 2006, this

Consent shall be null and void ab initio and an Event of Default shall occur as of December 15, 2006.

(c)   Not later than the second business day after the date hereof, the Company shall pay by wire transfer $93,562.62 to Cleary, Gottlieb Steen & Hamilton LLP (the "Cleary Payments"); provided, that unless the Company shall make the Cleary Payments on or prior to the second business day after the date hereof, this Consent shall be null and void ab initio and an Event of Default shall occur as of such date.

Section 4.     Waiver.  In reliance upon and subject to the accuracy of the representations and warranties made by the Company in this Consent, each of the Holders hereby waives all Defaults or Events of Default that may have arisen from:

(a)     any asserted failure to comply with the covenants contained in Section 8.1(a) of the Securities Purchase Agreement that may have occurred relating to the Company's failure to provide monthly financial reports to the Agent in a timely fashion with respect to each month up to and including August 2006.

(b)     the failure to comply prior to the date hereof with the covenants contained in Section 8.1(b)(iii) of the Securities Purchase Agreement due to the failure to furnish a certificate signed by the Chief Financial Officer or Chief Executive Officer within 60 days after the close of each quarterly accounting period regarding compliance with covenants and the absence of defaults.

(c)     the failure to comply with the covenants contained in Section 8.1(c) of the Securities Purchase Agreement due to the failure to furnish the 2005 Financial Statements on or prior to the 2005 Delivery Date; provided that, unless the Company delivers audited financial statements as of and for the fiscal year ended December 31, 2005 on or prior to December 15, 2006, then this Consent shall be null and void ab initio and an Event of Default shall occur as of the original date of the failure to so furnish the 2005 Financial Statements in accordance with Section 8.1(c) of the Securities Purchase Agreement prior to the effectiveness of this Consent;

(d)     the failure to comply with the covenants contained in Section 8.3(b)(iii), 8.3(b)(iv) and 8.3(b)(v) of the Securities Purchase Agreement; provided that, unless the Company complies with such covenants on or prior to December 15, 2006, then this Consent shall be null and void ab initio and an Event of Default shall occur as of the original date of the failure to comply with Section 8.3(b)(iii), 8.3(b)(iv) and 8.3(b)(v) of the Securities Purchase Agreement prior to the effectiveness of this Consent.

(e)     any asserted failure to comply with the covenants contained in Section 8.8 of the Securities Purchase Agreement that may have occurred relating to (i) the Company's failure to have executed and delivered and caused each depository institution, securities intermediary, commodity intermediary or issuer or nominated party under a letter of credit to have executed and delivered a collateral control agreement with respect to any Deposit Account, Securities Account or Commodity Account or Letter-of-Credit Right in or to which the Company has any right or interest in form and substance reasonably acceptable to the Required Holders and the Agent and (ii) any failure by the Company to execute and deliver and cause each depository institution, securities intermediary, commodity intermediary or issuer or nominated party under a letter of credit to execute and deliver a collateral control agreement on or before

December 31, 2006 in form and substance reasonably acceptable to the Required Holders and the Agent with respect to the accounts set forth on Exhibit G; provided that, unless the Company complies with covenants contained in Section 8.8 of the Securities Purchase Agreement (without giving effect to the provisions of this Consent) on or prior to December 15, 2006, then this Consent shall be null and void ab initio and an Event of Default shall occur as of December 15, 2006.

(f)    any asserted failure to comply with the covenant contained in Section 9.2(a) of the Securities Purchase Agreement, provided that the Company has complied with Section 9.2(a) as amended by this Consent.

(g)    any asserted failure to comply with the covenants contained in Sections 9.2 or 9.5 of the Securities Purchase Agreement that may have occurred relating to the execution and delivery of the CashReady LOI or the payment of $100,000 to CashReady in connection therewith; provided, that notwithstanding anything to the contrary, this shall not constitute a consent to the transactions contemplated by the Cashready LOI.

Section 5.    Amendment of Section 3.6(a) of the Securities Purchase Agreement. Section 3.6(a) of the Securities Purchase Agreement is hereby amended to read in full as follows:

"(a)    If the Company or any Subsidiary has received cash, in the aggregate, of at least $100,000,000 through (i) the issuance or sale of capital stock, equity securities, or options, warrants or rights to purchase the foregoing in one or more related or unrelated transactions after July 24, 2006 and/or (ii) the issuance or incurrence of debt after September 20, 2006 (or any combination thereof), the Company shall pay to each Holder of a Secured Note its Pro Rata Portion of $25,000,000, which payment shall be applied by such Holder pro rata among all Secured Notes held by such Holder, first against accrued and unpaid interest on such Secured Notes and then to outstanding principal. As used in this Section 3.6, the Holder's "Pro Rata Portion" of any payment shall be equal to a fraction, the numerator of which shall be the aggregate outstanding principal amount of and accrued and unpaid interest on the Secured Notes held by such Holder immediately prior to such payment and the denominator of which is the aggregate outstanding principal of and accrued and unpaid interest on all Secured Notes outstanding immediately prior to such payment."

Section 6A.    Amendment to Section 8.8(a) of the Securities Purchase Agreement. Section 8.8(a) of the Securities Purchase Agreement is hereby amended by deleting the "and" at the end of clause (iv) thereof and replacing it with the following:

"with respect to the accounts set forth on Exhibit G to the Consent, Waiver and Amendment dated as of November 2, 2006 between the Company and the Holders (the "November 2006 Consent") no later than December 15, 2006 and".

Section 6B.    Amendment to Section 9.2(a)(i) of Securities Purchase Agreement.

(a)    Section 9.2(a)(i) of the Securities Purchase Agreement is hereby amended to read in full as follows:

"(i)    From August 1, 2005 through December 31, 2005, the Capital Expenditures by the Company and its Subsidiaries may not be in excess of the sum of (A) the maximum Capital Expenditures allocable to each individual customer set forth on Schedule

9.2(a)(i) and (B) an additional $5,400,000, which the Company and its Subsidiaries may allocate in their sole discretion. To the extent that the Company and its Subsidiaries do not use the full allotment of Capital Expenditures allocated to any given customer as set forth on Schedule 9.2(a)(i), such unused amount will reduce the amount of aggregate Capital Expenditures permitted pursuant to Section 9.2(a)(i)(A)."

(b)    Section 9.2(a)(ii) of the Securities Purchase Agreement is hereby amended to read in full as follows:

"(ii)   From January 1, 2006 through December 31, 2006, the Capital Expenditures by the Company and its Subsidiaries may not be in excess of (A) $21,000,000, which the Company and its Subsidiaries may allocate in their sole discretion, (B) any amounts permitted pursuant to Section 9.2(a)(i)(A) not spent in 2005, provided that the Company entered into a bona fide agreement with the applicable customer in 2005, and (C) if the Company has further unused Subsidized Rollouts as set forth in subsection (a)(v) below that it has not yet designated and the Company elects to designate a customer that has check-out lanes and point of sale terminals, such as a retail or grocery store, as a Subsidized Rollout, $350 per check-out lane plus $3,500 per store location for such customer."

Section 7.    Amendment to Section 9.4 of Securities Purchase Agreement.  Section 9.4 of the Securities Purchase Agreement is hereby amended by (1) deleting the "and" at the end of clause (i) thereof, (2) deleting the "." at the end of clause (j) thereof and replacing it with "; and", and (3) adding the following immediately following clause (j) thereof:

"(k) Indebtedness of the Company and its Subsidiaries under the S&H Notes provided that (i) the S&H Notes shall not be amended or otherwise modified in any manner adverse to the Holders, (ii) such Indebtedness does not exceed $21,151,046.41 plus accrued and unpaid interest thereon and (iii) the Company shall not incur such Indebtedness unless the Company and the holders of the S&H Notes shall have entered into a subordination agreement substantially in the form attached as Exhibit C to the November 2006 Consent (as such agreement may be amended or otherwise modified from time to time in accordance with this Agreement) (the "S&H Subordination Agreement")."

Section 8A.    Amendment to Article 9 of Securities Purchase Agreement.  Article 9 of the Securities Purchase Agreement is hereby amended by adding the following Section 9.9 thereof:

"9.10  Payments under the BioPay Notes and the S&H Notes.  Neither the Company nor its Subsidiaries shall make any payment to the holders of the BioPay Notes (as defined in the Consent and Agreement dated as of December 6, 2005, by and among the Required Holders and the Company) or the S&H Notes other than as permitted under the Subordination Agreement dated as of January 15, 2006 by and among the Company, BioPay, LLC and the Bank of New York, as agent for the Holders (the "BioPay Subordination Agreement") or the S&H Subordination Agreement, as applicable."

Section 8B.    Amendment of Section 12.1 of the Securities Purchase Agreement.  (a)

(a)    The definition of "Capital Expenditures" in Section 12.1 of the Securities Purchase Agreement is hereby amended and restated to read in full as follows:

"Capital Expenditures" shall mean, with respect to any Person, all expenditures by such Person that are or are required to be set forth in the "Investment" section of a cash flow statement prepared in accordance with GAAP, including, without limitation, all such expenditures with respect to real property, intangible assets, fixed or capital assets (including, without limitation, expenditures for maintenance and repairs that should be capitalized in accordance with GAAP, but excluding expenditures in connection with business combinations, including Permitted Acquisitions and Permitted Joint Ventures) and the amount of Capitalized Lease Obligations, capitalized labor expenses and capitalized software development expenses incurred by such Person."

(b)      Section 12.1 of the Securities Purchase Agreement is hereby amended by adding the following after the definition of "Requirements of Law":

"S&H Notes": shall mean notes in substantially the form attached as Exhibit B to November 2006 Consent, as such notes may be amended or otherwise modified from time to time in accordance with this Agreement."

Section 9. Amendment of Schedule 9.2(h) to the Securities Purchase Agreement. Schedule 9.2(h) to the Securities Purchase Agreement is hereby amended to add the S&H Acquisition and the PayNet Acquisition.

Section 10A.  Amendment to Section 10.1 of Securities Purchase Agreement. Section 10.1 of the Securities Purchase Agreement is hereby amended by (1) inserting a ";" in lieu of the period at the end of clause (m) thereof and (3) adding the following immediately following clause (n) thereof:

(n) Any failure by the Company to comply with the terms of the Issuance Agreement dated as of November 2, 2006 by and between the Company and the Holders.

Section 10B.   Spreadsheet. The Company hereby represents and warrants that, after giving effect to the S&H Acquisition and the PayNet Acquisition, the spreadsheet attached hereto as Exhibit F (the "Spreadsheet") contains a true, complete and correct summary as of the date hereof of (1) all issuances by the Company of its equity securities and other events that trigger adjustments under the Warrants (the "Warrant Adjustments") and Annexes A and B of the Unsecured Notes (the "Note Adjustments"), (2) to the extent currently calculable, the number of additional shares of Common Stock of the Company issuable to each Holder pursuant to the Warrant Adjustments, and (3) to the extent currently calculable, the aggregate principal amount of each Holder's Unsecured Notes as a result of the Note Adjustments. The Company hereby represents and warrants that the Company will be issuing a maximum of 7,000,000 shares of Common Stock of the Company and 15,000,000 shares of Series C Preferred Stock of the Company in connection with the S&H Acquisition, as set forth on the Spreadsheet. The Spreadsheet is being delivered in satisfaction of the Company's obligations pursuant to Section 5 of each of the Warrants.

Section 10C.   Warrant and Unsecured Note Adjustments. For the purpose of Section 5 of the Warrants and Annex B of the Unsecured Notes, on the date that this Consent is executed and delivered, the Company shall be deemed to have issued 3,780,000 shares of Series C Preferred Stock on the date hereof (the "Deemed Issuance"), which Deemed Issuance shall be

8

reflected on the Spreadsheet and shall be entitled to the full benefit of the adjustments set forth in Section 5 of the Warrants and Annex B of the Unsecured Notes.

Section 11A.  Amendment to the New Warrants.  The New Warrants shall be amended in the following manner:

(a)  The definition of "Planned Acquisitions" in the New Warrants shall be amended by (1) deleting the text in clause (ii) thereof (but before the proviso to the definition of "Planned Acquisitions") and replacing it with the following:

"(ii) after September 20, 2006 but on or prior to September 20, 2007"

and (2) adding the following after the text in clause (ii) (but before the proviso to the definition of "Planned Acquisitions"):

", whether by stock purchase, asset purchase, merger, consolidation or other transaction,"

(b)  The definition of "Planned Issuances" in the New Warrants shall be amended by (1) deleting the text in clause (iv) thereof and replacing it with the following:

"[intentionally omitted]",

(2)  deleting the "and" after clause (iv) thereof, (3) deleting the "," after clause (v) thereof, (4) adding the following after clause (v) thereof (but before the proviso to the definition of "Planned Issuances"):

"; (vi) the deemed issuance of 3,780,000 shares of Series C Preferred Stock of the Company on November 2, 2006 pursuant to the Deemed Issuance (as defined in the November 2006 Consent); and (vii) the issuance by the Company of equity securities in connection with a third party financing in exchange for an amount of proceeds equal to the CashReady LOI Payment (as defined in the November 2006 Consent)," and

(5)  adding the following at the end of clause (ii) thereof:

"provided, that, with respect to the S&H Acquisition (as defined in the Consent, Waiver and Amendment dated as of November 2, 2006, by and among the Holders (as defined therein) and the Company (the "November 2006 Consent")), this clause (ii) shall only apply with respect to any consideration for the S&H Acquisition that the Company pays in cash in excess of $3,000,000, and then this clause (ii) shall only apply to such excess amount;"

Section 11B.  Amendment to the Warrants.  The Warrants (other than the New Warrants covered by Section 11A above) (the "Old Warrants") shall be amended in the following manner:

(a)  The definition of "Planned Acquisitions" in the Old Warrants shall be amended by (1) deleting the text in clause (ii) thereof (but before the proviso to the definition of "Planned Acquisitions") and replacing it with the following:

"(ii) after September 18, 2006 but on or prior to September 18, 2007"

and (2) adding the following after the text in clause (ii) (but before the proviso to the definition of "Planned Acquisitions"):

", whether by stock purchase, asset purchase, merger, consolidation or other transaction,"

(b) The definition of "Planned Issuances" in the Old Warrants shall be amended by (1) deleting the "and" at the end of clause (iii) thereto, (2) deleting the "." at the end of clause (iv) thereto, (3) adding the following after clause (iv) thereto (but before the proviso to the definition of "Planned Issuances"):

"; (v) the issuance of 3,780,000 shares of Series C Preferred Stock of the Company on November 2, 2006 pursuant to the Deemed Issuance (as defined in the November 2006 Consent); and (vi) the issuance by the Company of equity securities in connection with a third party financing in exchange for an amount of proceeds equal to the CashReady LOI Payment (as defined in the November 2006 Consent)," and

(4) adding the following at the end of clause (iii) thereof:

"; provided, that, with respect to the S&H Acquisition (as defined in the Consent, Waiver and Amendment dated as of November 2, 2006, by and among the Holders (as defined therein) and the Company (the "November 2006 Consent")), this clause (iii) shall only apply with respect to any consideration for the S&H Acquisition that the Company pays in cash in excess of $3,000,000, and then this clause (iii) shall only apply to such excess amount;"

Section 12.     Amendment to the Unsecured Notes.  The Unsecured Notes shall be amended in the following manner:

(a) The definition of "Subsequent Acquisitions" in the Unsecured Notes shall be amended by (1) deleting "after September 18, 2006 pursuant to a letter of intent executed on or prior to March 18, 2005" in clause (ii) thereof and replacing it with the following:

"(ii) after September 18, 2006 but on or prior to September 18, 2007"

(b) The definition of "Subsequent Issuances" in the Unsecured Notes shall be amended by (1) deleting the "and" at the end of clause (i) thereof, (2) adding the following at the end of clause (ii) thereof (but before the proviso to the definition of "Subsequent Issuances"):

", (iii) the issuance of 3,780,000 shares of Series C Preferred Stock of the Company on November 2, 2006 pursuant to the Deemed Issuance (as defined in the November 2006 Consent) and (iv) the issuance by the Company of equity securities in connection with a third party financing in exchange for an amount of proceeds equal to the CashReady LOI Payment (as defined in the November 2006 Consent)," and

(3) adding the following at the end of clause (ii) thereof:

"; provided, that, with respect to the S&H Acquisition (as defined in the Consent, Waiver and Amendment dated as of November 2, 2006, by and among the Holders (as defined therein) and the Company (the "November 2006 Consent")), this clause (ii) shall only apply with

respect to any consideration for the S&H Acquisition that the Company pays in cash in excess of $3,000,000, and then this clause (ii) shall only apply to such excess amount;"

Section 13.    Antidilution Adjustments.  The Company hereby represents and warrants that the transactions contemplated by the Amendment dated as of September 20, 2006, by and among the Holders, the Company and the Bank of New York, as agent (including the issuance of any securities thereunder) did not give rise to any antidilution or similar adjustment in any of the Company's debt or equity securities.

Section 14.    Effectiveness.  This Consent shall become effective upon the occurrence of the following conditions:

(a)    The Company and the Required Holders shall have duly executed and delivered a copy of this Consent to each other;

(b)    The Company shall have paid all outstanding amounts owing to the Holders pursuant to Section 13.1 of the Securities Purchase Agreement on or prior to the date hereof.

(c)    The Company and the Required Holders shall have duly executed and delivered the Issuance Agreement, attached hereto Exhibit H, and the Company shall have issued stock certificates to the Required Holders representing the shares of Series C Preferred Stock to be issued to them pursuant to the Issuance Agreement.

Section 15. Miscellaneous.

(a)    Consent as Transaction Document.  The parties hereby agree that this Consent shall be a Transaction Document for all purposes under the Securities Purchase Agreement.  After the date of the effectiveness of this Consent, any reference in the Securities Purchase Agreement to "this Agreement" or words of similar import shall mean a reference to the Securities Purchase Agreement as waived, amended or modified hereby.

(b)    No Default or Event of Default.  In order to induce the Holders to enter into this Consent, the Company hereby represents, warrants and certifies to each Holder that, after giving effect to this Consent, no Default or Event or Default has occurred and is continuing or would result from the consummation of any of the transactions contemplated hereby and that as of the date hereof, there is no Default or Event of Default.

(c)    No Other Consents.  Except as expressly set forth herein, the Securities Purchase Agreement remains in full force and effect in accordance with its terms and nothing contained herein shall be deemed (i) to be a waiver, consent, amendment, modification or other change of any term, condition or provision of the Securities Purchase Agreement or any other Transaction Document (or a consent to any such waiver, consent, amendment, modification or other change), (ii) to be a consent to any transaction, (iii) to prejudice any right or rights which any Holder may have under the Securities Purchase Agreement and/or any of the other Transaction Documents, or (iv) to entitle the Company to a consent, amendment, modification or other change of any term, condition or provision of the Securities Purchase Agreement or any other Transaction Document (or a consent to any such waiver, consent, amendment, modification or other change), or to a consent, in the future in similar or different circumstances.

(d)    Further Assurances.  The Company agrees to do such further acts and things, and to execute and deliver such additional conveyances, assignments, agreements and instruments, as any Holder may at any time reasonably request in connection with the administration and enforcement of this Consent or in order to better assure and confirm unto each of the Holders its rights and remedies hereunder and to permit the exercise thereof in compliance with applicable law (including upon an Event of Default).

(e)    Counterparts.  This Consent may be executed in any number of counterparts, each of which shall constitute an original instrument, but all of which when taken together shall constitute but one Consent.

(f)    Governing Law.  This Consent shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, as provided in Section 13.7 of the Securities Purchase Agreement.

(g)    Notices.  All notices, demands and requests of any kind to be delivered to any party hereto in connection with this Consent shall be delivered in accordance with the notice provisions contained in the Securities Purchase Agreement.

(h)    Headings.  The headings used herein are for convenience of reference only and shall not affect the construction of, nor shall they be taken into consideration in interpreting, this Consent.

(i)    Fees and Expenses.  Without limiting the generality of Section 13.1 of the Securities Purchase Agreement, the Company hereby agrees that the Company shall reimburse all reasonable out-of-pocket costs and expenses of the Holders incurred in connection with this Consent, including the preparation, execution and delivery of this Consent and the documents and instruments referred to herein and therein.

(j)    Issuance Agreement.  The Company shall execute and deliver a counterpart of the Issuance Agreement with each Holder that shall execute and deliver this Consent on or prior to 5:00 p.m. (eastern standard time) on November 16, 2006.

* * * * *

IN WITNESS WHEREOF, this Consent has been duly executed as of the day and year first above written.

SOLIDUS NETWORKS, INC.

Name:
Title:

OZ MASTER FUND, LTD.

By: OZ Management, L.L.O., its Investment Manager

Name:
Title:

DENARIUS TOUCH, L.L.C.

By: Farallon Capital Management, L.L.C., its manager

Name:
Title:

HIGHBRIDGE INTERNATIONAL LLC

By: Highbridge Capital Management, LLC

Name:
Title:

IN WITNESS WHEREOF, this Consent has been duly executed as of the day and year first above written.

SOLIDUS NETWORKS, INC.

_____
Name:
Title:


OZ MASTER FUND, LTD.

By: OZ Management, L.L.C., its Investment Manager

_____
Name:
Title:


DENARIUS TOUCH, L.L.C.

By: Farallon Capital Management, L.L.C., its manager

_____
Name:
Title:


HIGHBRIDGE INTERNATIONAL LLC

By: Highbridge Capital Management: LLC

_____
Name:
Title:

IN WITNESS WHEREOF, this Consent has been duly executed as of the day and year first above written.

SOLIDUS NETWORKS, INC.

Name: _____
Title:

OZ MASTER FUND, LTD.

By: OZ Management, L.L.C., its Investment
Manager

Name: _____
Title:

DENARIUS TOUCH, L.L.C.

By: Farallon Capital Management, L.L.C.,
its manager

Name: _____
Title:

HIGHBRIDGE INTERNATIONAL LLC

By: Highbridge Capital Management, LLC

By:
Name: Adam J. Chill
Title: Managing Director

Y1:1665884.12

IN WITNESS WHEREOF, this Consent has been duly executed as of the day and year first above written.

SOLIDUS NETWORKS, INC.

_____
Name:
Title:

OZ MASTER FUND, LTD.

By: OZ Management, L.L.C., its Investment Manager

_____
Name:
Title:

DENARIUS TOUCH, L.L.C.

By: Farallon Capital Management, L.L.C., its manager

_____
Name: William F. Duhamel
Title: Managing Member

HIGHBRIDGE INTERNATIONAL LLC

By: Highbridge Capital Management, LLC

_____
Name:
Title:

Y1:\665884.12

PLAINFIELD DIRECT LLC

Name: Thomas K. Foiton
Title: Authorized Individual

**Annex I**

**S&H Notes**

**Noteholders**

1. Graham Gund
2. Eaglis Alternative Investments I, LLC
3. Jennifer McNeil
4. Geoffrey T. Freeman
5. Henry A. Jordon, M.D.
6. S&H Nominee Trust
7. Ann Beinecke Oliver, Trustee f/b/o Ann Oliver u/a 6/9/81
8. C. Hardy Oliver
9. J. Stuart Moore
10. Walter Beinecke, III
11. Stratton Weaver and Shelby J. Weaver
12. McDonald Investments f/b/o Richard G. Smolev IRA

Y3:1665884.12

Annex II

S&H Trademarks

See attached.





# Exhibit D

SUPPLEMENT NO. 2 dated as of June 15, 2007 (this "Supplement"), to the Guarantee dated as of February 28, 2006, as amended, modified or supplemented from time to time, by each of the guarantors listed on Schedule I thereto (the "Guarantors"), for the benefit of the Holders (as defined in the Securities Purchase Agreement referred to below).

WHEREAS, Solidus Networks, Inc., a Delaware corporation (the "Company"), OZ Master Fund, Ltd, Denarius Touch, L.L.C., Plainfield Special Situations Masterfund Limited, Plainfield Direct LLC and Highbridge International LLC (each a "Purchaser") and The Bank of New York, as agent for the Purchasers (in such capacity, the "Agent"), are parties to the Amended and Restated Securities Purchase Agreement dated as of December 6, 2005 (as such agreement may be amended, modified, restated or supplemented from time to time, the "Securities Purchase Agreement").

WHEREAS, the Guarantors have entered into the Guarantee dated as of February 28, 2006, as amended or supplemented or otherwise modified through the date hereof (as such guarantee may be further amended, restated or otherwise modified from time to time, the "Guarantee").

WHEREAS, Section 8 of the Guarantee provides that additional Persons may become Guarantors under the Guarantee by execution and delivery of an instrument substantially in the form of this Supplement.

WHEREAS, the undersigned (the "New Guarantors") are executing this Supplement in accordance with the requirements of the Guarantee and otherwise to become Guarantors under the Guarantee.

NOW THEREFORE, the parties to this Agreement hereby agree as set forth below.

Section 1.    In accordance with Section 8 of the Guarantee, the New Guarantors by their signature below become Guarantors under the Guarantee with the same force and effect as if originally named therein as Guarantors and the New Guarantors hereby agree to all the terms and provisions of the Guarantee applicable to them as Guarantors thereunder. Each reference to a "Guarantor" in the Guarantee shall be deemed to include the New Guarantors. The Guarantee is hereby incorporated herein by reference.

Section 2.    The New Guarantors represent and warrant to the Holders and the Agent that (a) the New Guarantors are duly organized, validly existing and in good standing under the laws of the jurisdiction of their organization; (b) this Supplement has been duly authorized, executed and delivered by them; and (c) this Supplement constitutes a legal, valid and binding obligation, enforceable against them in accordance with its terms except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general

1017557 V2/SF

application affecting enforcement of creditors' rights and general principles of equity that restrict the availability of equitable remedies.

Section 3.    This Supplement shall become effective when the Agent shall have received a counterpart of this Supplement that bears the signature of the New Guarantors. Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Supplement.

Section 4.    Except as expressly supplemented hereby, the Guarantee shall remain in full force and effect.

Section 5.    ALL QUESTIONS CONCERNING THE CONSTRUCTION, INTERPRETATION AND VALIDITY OF THIS SUPPLEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE DOMESTIC LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF NEW YORK.

Section 6.    All communications and notices hereunder shall be in writing and given as provided in Section 14 of the Guarantee. The New Guarantors acknowledge and agree that all communications and notices hereunder to the New Guarantors shall be given to them in care of the Company, at the address specified for the Company in the Securities Purchase Agreement.

*******

IN WITNESS WHEREOF, the New Guarantors have duly executed this Supplement to the Guarantee as of the day and year first above written.

S&H MARKETING, INC., as New Guarantor

By: _____

Name: Steve Zelinger

Title: General Counsel and Secretary

THE SPERRY AND HUTCHINSON COMPANY, INC., as New Guarantor

By: _____

Name: Steve Zelinger

Title: General Counsel and Secretary

17357 v2/SF