**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WALTER BEINECKE, III, EAGLIS
ALTERNATIVE INVESTMENTS I, LLC,
GEOFFREY T. FREEMAN, GRAHAM GUND,
HENRY A. JORDAN, JENNIFER C. McNEIL,
J. STUART MOORE, and CARL NOVOTNY,
TRUSTEE of the S&H NOMINEE TRUST,

              Plaintiffs,

        -against-

S&H MARKETING, INC. f/k/a S&H
GREENPOINTS, INC., and THE SPERRY AND
HUTCHINSON COMPANY, INC.,

              Defendants.

08 Civ. 2483 (GBD)

**ELECTRONICALLY FILED**

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND

Gary Svirsky
Peter Herrick
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061
gsvirsky@omm.com
pherrick@omm.com

*Attorneys for Defendants S&H Marketing, Inc.*
*f/k/a S&H Greenpoints, Inc., and The Sperry*
*and Hutchinson Company, Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ................................................................................................................................... 4

    A.    The S&H and Sperry Guarantees ........................................................ 4

    B.    Solidus's creditors file an involuntary
        chapter 11 bankruptcy petition .......................................................... 5

    C.    Plaintiffs sue S&H and Sperry
        in New York state court. .................................................................... 6

    D.    Solidus sells most of its assets under a complex Asset Sale
        and Purchase Agreement with the Senior Creditors. ......................... 7

    E.    Plaintiffs, Defendants, and other relevant non-parties
        have no meaningful connection to New York. .................................... 7

ARGUMENT ......................................................................................................................... 8

  POINT I    PLAINTIFFS' ESTOPPEL ARGUMENT HAS NO FOUNDATION IN
           THE LAW, THE FACTS, OR THE UNDERLYING AGREEMENTS. .............................. 8

    A.    In any event, Defendants cannot be judicially estopped
        because they have not taken any inconsistent position. ...................... 8

    B.    Plaintiffs may not enforce forum selection clauses
        from contracts to which they are not parties. ................................... 11

  POINT II   THE COURT HAS "RELATED TO" JURISDICTION BECAUSE THIS
           ACTION WILL HAVE MORE THAN A "CONCEIVABLE EFFECT"
           ON THE CALIFORNIA BANKRUPTCY PROCEEDING. ............................................ 12

  POINT III  THE COURT MUST EXERCISE ITS JURISDICTION BECAUSE PLAINTIFFS
           HAVE NOT MET THEIR BURDEN ON REMAND OR ABSTENTION. ......................... 15

    A.    Plaintiffs do not, and cannot, justify
        equitable remand or permissive abstention. ...................................... 15

    B.    Mandatory abstention is inappropriate because it
        would interfere with and prolong the California
        bankruptcy proceeding. .................................................................... 20

CONCLUSION ..................................................................................................................... 24

## TABLE OF AUTHORITIES

Page

### CASES

*Amanat v. Wollmuth Maher & Deutsch, LLP (In re Marketxt),*
338 B.R. 574 (Bankr. S.D.N.Y. 2005)................................................................. 23

*Beinecke v. S&H Marketing, Inc. et al.,*
No. 600503-08 (Sup. Ct. filed Feb. 19, 2008) ....................................................... 2

*Blackacre Bridge Capital LLC v. Korff (In re River Center Holdings, LLC),*
288 B.R. 59 (Bankr. S.D.N.Y. 2003)............................................................17-19

*Bondi v. Grant Thornton Int'l,*
322 B.R. 44 (S.D.N.Y. 2005)............................................................................ 21

*Celotex Corp. v. Edwards,*
514 U.S. 300 (1995)........................................................................................ 12

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,*
03 Civ. 7248(JGK), 2004 WL 224505 (S.D.N.Y. Feb. 5, 2004).....................3, 10, 12-16, 18

*City of New York v. Philips,*
709 N.Y.S.2d 417, 272 A.D.2d 568 (2 Dep't 2000) ............................................. 20

*Colonial Refrigerated Transp., Inc. v. Mitchell,*
403 F.2d 541 (5th Cir. 1968) ............................................................................ 8

*Colorado River Water Conserv. Dist. v. United States,*
424 U.S. 800 (1976)........................................................................................ 20

*ComJet Aviation Mgmt. LLC v. Aviation Investors Holdings Ltd.,*
303 A.D.2d 272, 758 N.Y.S.2d 607 (1st Dep't 2003) .......................................... 11

*Dayhoff Inc. v. H.J. Heinz Co.,*
86 F.3d 1287 (3d Cir. 1996)............................................................................. 11

*Deep v. Boies,*
No. 1:05-CV-1187(FJS/RFT), 2007 WL 169940 (N.D.N.Y. Jan. 17, 2007) ......................... 23

*Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.,*
627 F. Supp. 1202 (S.D.N.Y. 1986).................................................................... 11

*Enron Corp. v. Arora (In re Enron Corp.),*
317 B.R. 629 (Bankr. S.D.N.Y. 2004).......................................................... 10, 23

*Festinger v. Edrich,*
820 N.Y.S.2d 302, 32 A.D.3d 412 (2 Dep't 2006) ................................................ 9

*Fieger v. Pitney Bowes Credit Corp.,*
251 F.3d 386 (2d Cir. 2001).............................................................................. 23

*Home Ins. Corp. v. Leprino Foods Co.,*
No. 02 Civ. 1044(DAB), 2002 WL 1315599 (S.D.N.Y. June. 14, 2002)............................. 20

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,*
No. 03 MDL 1529, 2003 WL 23018802 (S.D.N.Y. Dec. 23, 2003)..................................... 13

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MDL 1529(LMM), 2005 WL 1026559 (S.D.N.Y. May 2, 2005) ........................ 13-15

*In re Adelphia Commc'ns Corp.*,
   307 B.R. 404 (Bankr. S.D.N.Y. 2004) ........................................................................... 13, 14

*In re Brentano's, Inc.*,
   27 B.R. 90 (Bankr. S.D.N.Y. 1983) ...................................................................................... 18

*In re Eden Associates*,
   13 B.R. 578 (Bankr. S.D.N.Y. 1981) ............................................................................. 10, 23

*In re Estate of Rivara*,
   785 N.Y.S.2d 469, 12 A.D.3d 611 (2d Dep't 2004) .............................................................. 20

*In re Gen. Am. Commc'ns Corp.*,
   No. 83-B11495, 1990 Bankr. LEXIS 2985 (Bankr. S.D.N.Y. Dec. 7, 1990) ........................ 22

*In re Georgou*,
   157 B.R. 847 (Bankr. N.D. Ill. 1993) ............................................................................. 21, 22

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   725 F. Supp. 712 (S.D.N.Y. 1989) ...................................................................................... 12

*In re Lloyd's Am. Trust Fund Litig.*,
   954 F. Supp. 656 (S.D.N.Y. 1997) ...................................................................................... 11

*Hackeling v. Rael Automatic Sprinkler Co. (In re Luis Elec. Contracting Corp.)*,
   165 B.R. 358 (Bankr. E.D.N.Y. 1992) .................................................................................. 20

*In re WorldCom, Inc. Sec. Litig.*,
   308 F. Supp. 2d 236 (S.D.N.Y. 2004) ............................................................................... 9, 10

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
   74 B.R. 651 (N.D. Ill. 1987) ................................................................................................ 22

*Janazzo v. Fleetboston Fin. Corp.*,
   No. 01 C 6939, 2002 U.S. Dist. LEXIS 451 (N.D. Ill. Jan. 15, 2002) ............................. 21, 22

*Kirschner v. Grant Thornton LLP (In re Refco, Inc. Securities Litigation)*,
   Ch. 11 Case No. 05-60006, Adv. No. 07 Civ. 11604 (S.D.N.Y. Apr. 21, 2008) ....... 10, 21, 22

*McCarthy v. Azure*,
   22 F.3d 351 (1st Cir. 1994) .................................................................................................. 11

*Mt. McKinley Ins. Co. v. Corning Inc.*,
   399 F.3d 436 (2d Cir. 2005) ................................................................................................. 19

*N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec.*
   *Litig.)*, 293 B.R. 308 (S.D.N.Y. 2003), *aff'd*, 368 F.3d 86 (2d Cir. 2004) ................. 13-17, 21

*Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*,
   No. 95 Civ. 0277 (LAP), 1995 WL 489711 (S.D.N.Y. Aug. 14, 1995) ........................... 16, 17

*Neuman v. Goldberg*,
   159 B.R. 681 (S.D.N.Y. 1993) ........................................................................................ 19, 22

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .............................................................................................................. 9

*NTL, Inc. v. CRT Capital Group LLC*,
   295 B.R. 706 (Bankr. S.D.N.Y. 2003) ............................................................................. 20, 21

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),*
  980 F.2d 110 (2d Cir. 1992)................................................................................................. 13

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.,*
  277 B.R. 5 (S.D.N.Y. 2002)............................................................................................. 16-22

*Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.,*
  No. 99 Civ. 11248(SHS), 2000 WL 890191 (July 5, 2000) .................................................. 21

*S.G. Phillips Constructors, Inc. v. City of Burlington,*
  45 F.3d 702 (2d Cir. 1995)................................................................................................. 23

*Tallo v. Gianopoulos,*
  321 B.R. 23 (E.D.N.Y. 2005) ............................................................................................... 3

*Transamerica Leasing, Inc. v. Inst. of London Underwriters,*
  430 F.3d 1326 (11th Cir. 2005) ............................................................................................ 9

*Uzdavines v. Weeks Marine, Inc.,*
  418 F.3d 138 (2d Cir. 2005)................................................................................................. 9

*Von Richthofen v. Family M. Foundation Ltd.,*
  339 B.R. 315 (S.D.N.Y. 2005)........................................................................................... 23

## PRELIMINARY STATEMENT

This case is about Plaintiffs' attempt to avoid their contractual commitments by circumventing the Bankruptcy Court's oversight of a related chapter 11 reorganization. Plaintiffs are holders of subordinated notes issued by S&H Marketing, Inc. ("S&H") and The Sperry and Hutchinson Company, Inc. ("Sperry," and together with S&H, "Defendants"). In December 2006, Solidus Networks, Inc. ("Solidus") acquired S&H, which in turn owns Sperry. In connection with that acquisition, Solidus paid Plaintiffs $3 million and assumed the obligations owed to Plaintiffs pursuant to the subordinated notes. Since 2005, Solidus financed its operations through a series of senior notes issued pursuant to a Securities Purchase Agreement (the "SPA") that Solidus entered into with certain senior noteholders (the "Senior Creditors"). The SPA required Solidus to obtain the Senior Creditors' consent before acquiring S&H. The SPA also obligated Defendants to (i) guarantee Solidus's obligations to the Senior Creditors and (ii) secure those guarantees with liens on most of their assets. As a condition to their consent to the S&H acquisition the Senior Creditors also insisted that Plaintiffs subordinate the obligations that Solidus and Defendants owed them to the obligations that Solidus and Defendants owed the Senior Creditors. Plaintiffs knowingly agreed to that subordination.

Subsequently, Solidus consented to several of its creditors filing a chapter 11 bankruptcy petition in the Central District of California, where Defendants later agreed to guarantee a debtor-in-possession—or DIP—loan for Solidus, which they secured with liens on most of their assets. Plaintiffs' effort through this action (the "Action") to strike the DIP and SPA guarantees without regard to Solidus's bankruptcy proceeding could, among other things, cause Solidus to default on its Bankruptcy Court-ordered DIP loan and be a "Termination Event" under that Order. Indeed, getting around the orderly administration of Solidus's bankruptcy proceeding and attempting to undermine the Senior Creditors' priority likely explains why Plaintiffs filed the

Action in New York state court, rather than as an adversary proceeding in the related Solidus bankruptcy where it belongs.[1]

Here, the close relationship between Solidus's bankruptcy proceeding and this removed Action empowers this Court to stop Plaintiffs' attempt to end-run the Bankruptcy Court's authority and militates both against remand and in favor of transferring the case to the Central District of California. That District Court's automatic reference to the Bankruptcy Court of all bankruptcy-related cases means that the Honorable Thomas Donovan, who has overseen Solidus's bankruptcy *since October 31, 2007*, will preside over the Action.

By not challenging the following long list of dispositive facts, Plaintiffs' Remand Motion (the "Remand Motion") and Opposition to the Transfer Motion actually demonstrate—rather than dispute—that Judge Donovan's court is the proper venue for this Action:[2]

- Solidus is currently in chapter 11 bankruptcy proceedings before Judge Donovan in the Central District of California Bankruptcy Court;

- one of the two guarantees that Plaintiffs challenge in this Action was made in support of Solidus's DIP financing;

- Judge Donovan approved that DIP financing, while reserving judgment on Plaintiffs' objections, which raise the exact same issues as the Complaint here;

- Plaintiffs have appeared before Judge Donovan in the Bankruptcy Court and are listed as creditors in Solidus's bankruptcy;

- not a single Plaintiff resides in New York, and Plaintiffs have not alleged a single violation of New York law;

- Defendants' headquarters are in Florida, and Solidus's headquarters are in California; and

---

[1]   Plaintiffs originally filed their Complaint in New York Supreme Court as *Beinecke v. S&H Marketing, Inc. et al.*, No. 600503-08 (Sup. Ct. filed Feb. 19, 2008).

[2]   Unless otherwise indicated, all defined terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Transfer Venue to the Central District of California, dated March 13, 2008 (Docket No. 4) [hereinafter Opening Transfer Brief]. Defendants incorporate herein their Opening Transfer Brief, the Reply Brief, dated April 14, 2008 (Docket No. 23) [hereinafter Transfer Reply Brief], and the Herrick Declaration, dated April 14, 2008 (Docket No. 24).

- every other relevant non-party is currently embroiled in the Solidus bankruptcy in California.

Given these **uncontested** facts, it is Judge Donovan—rather than some unassigned New York state court judge—who is best positioned to adjudicate Plaintiffs' claims justly and efficiently.

For those same reasons, Judge Donovan is also best positioned to decide Plaintiffs' remand motion. This Court should therefore "exercise its discretion to transfer the case and permit the home bankruptcy court to decide the issue of remand."[3] Placing the Remand Motion in Judge Donovan's hands would further the "efficiency policies intrinsic in bankruptcy law," which "prevent courts in one district from interfering with the orderly administration of a case filed in another district."[4] Moreover, "[p]ermitting the bankruptcy court to decide the motion for remand is in accord with the strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending."[5]

*   *   *

This Court can quickly dispose of Plaintiffs' attempts to obscure that transferring the Action to California is the only rational outcome. **First**, Plaintiffs' contention that a non-party's arguments can estop another party in a different legal proceeding has absolutely no basis in law. **Second**, Plaintiffs may not—to suit their own venue choice—enforce forum-selection provisions contained in contracts to which they are not parties.

---

[3]  *Tallo v. Gianopoulos*, 321 B.R. 23, 29 (E.D.N.Y. 2005) (deciding transfer motion before remand motion and transferring matter to "home court" of bankruptcy case because it was "better situated to determine the propriety of remand"); *see also Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 03 Civ. 7248(JGK), 2004 WL 224505, at *9 (S.D.N.Y. Feb. 5, 2004) (denying remand motion, granting transfer motion, and holding that court to which action was being transferred "could decide that New York state court is the appropriate forum to litigate this dispute" and is "best suited to make those determinations").

[4]  *Tallo*, 321 B.R. at 28.

[5]  *Id.* at 29.

## FACTS

### A.    The S&H and Sperry Guarantees.

In mid-2006, Solidus and S&H began discussing a merger.[6] To undertake that

transaction, Solidus needed the Senior Creditors' approval under the pre-existing SPA.[7] To that

end, on November 2, 2006, Solidus entered into a consent agreement with its Senior Creditors,

under which they approved the Solidus-S&H merger on two conditions: (i) Plaintiffs would have

to subordinate their notes with Defendants to the Senior Creditors' notes with Solidus; and

(ii) Defendants would have to give guarantees of Solidus's obligations to the Senior Creditors

and secure those guarantees with liens on most of Defendants' assets as well as Solidus's stock

in Defendants (the "Solidus-S&H Consent").[8]

Consistent with the Solidus-S&H Consent's requirements, on December 5, 2006,

Plaintiffs expressly agreed to subordinate their S&H/Sperry notes to Solidus's obligations to the

Senior Creditors (the "Subordination Agreement"). The Subordination Agreement provides that

Plaintiffs' rights against both Solidus *and* Defendants are junior to the Senior Creditors' rights

against Solidus *and* Defendants.[9] Plaintiffs agreed not to challenge the validity of Solidus or

Defendants' Senior Secured Obligations, including S&H and Sperry's guarantees that are the

subject of this Action.[10] In short, Plaintiffs agreed not to commence litigation of this sort.

In December 2006, S&H became a direct subsidiary of Solidus, and Sperry became

Solidus's second-tier subsidiary.[11] In connection with that acquisition, Solidus paid Plaintiffs

---

[6]    Lumsden Decl. ¶7, Mar. 13, 2008.

[7]    Sussman Decl. Ex. A (SPA), at §9.2, Mar. 13, 2008.

[8]    Sussman Decl. Ex. B (Solidus-S&H Consent (aka Consent, Waiver and Amendment)), at §§2(a), 3(a)(ii)(A).

[9]    In addition, in the Subordination Agreement, Plaintiffs agreed that Solidus could incur "Additional Debt" and any obligations of Solidus *and* S&H on that Additional Debt would be senior to the obligations owed by S&H (or Solidus) to Plaintiffs. Sussman Decl. Ex. C (Subordination Agreement), at §11(c).

[10]    Sussman Decl. Ex. C (Subordination Agreement), at §7(a).

[11]    Lumsden Decl. ¶7; *see also* Sussman Decl. Ex. D (S&H Merger Agreement).

$3 million and assumed Defendants' obligations to Plaintiffs under the subordinated notes.[12] As required by the Solidus-S&H Consent, on June 15, 2007, S&H and Sperry jointly and severally guaranteed Solidus's obligations to the Senior Creditors, securing those guarantees with liens on most of their assets.[13] Steve Zelinger, Solidus's General Counsel in California, executed those guarantees on Defendants' behalf.[14]

## B. Solidus's creditors file an involuntary chapter 11 bankruptcy petition.

On or about October 31, 2007, some of Solidus's creditors filed an involuntary chapter 11 bankruptcy petition against Solidus in the United States Bankruptcy Court for the Central District of California. Judge Donovan has presided over that bankruptcy proceeding since its inception. In November 2007, the Delaware Chancery Court issued an Order appointing Thomas Lumsden as Custodian of Solidus, providing that he was "to take possession and control of Solidus Networks Inc. and its subsidiaries and affiliates," including Defendants.[15] Judge Donovan later considered that Order in the Solidus bankruptcy proceedings, noting that it "quite clearly vests in Mr. Lumsden all authority with respect to Solidus and its affiliates and subsidiaries."[16]

On December 14, 2007, Solidus consented to the entry of an order for relief under chapter 11 of the Bankruptcy Code.[17] One week later, Solidus's Board of Directors appointed Mr. Lumsden the Debtors' Chief Restructuring Officer. In that position he performs "various

---

[12]    Sussman Decl. Ex. D (S&H Merger Agreement), at §1.11.

[13]    Sussman Decl. Ex. E (Supplement No. 2), at §1; Lumsden Decl. ¶8.

[14]    Sussman Decl. Ex. E (Supplement No. 2), at 3.

[15]    Herrick Decl. Ex. C (Delaware Chancery Court Order), at ¶1.

[16]    Herrick Decl. Ex. D (Feb. 25, 2008, Hr'g Tr.), at 86:15-19 ("[W]e have the [Delaware Chancery Court] custodian order, which quite clearly vests in Mr. Lumsden all authority with respect to Solidus and its affiliates and subsidiaries which are thereafter referred to throughout the custodian order under the term 'the company.'").

[17]    Sussman Decl. Ex. F (Solidus Consent to Chapter 11 Order).

management functions, including without limitation, overseeing the daily financial and business operations of Solidus and its debtor and non-debtor subsidiaries—including S&H Marketing, Inc. ("S&H") and The Sperry and Hutchinson Company, Inc. ("Sperry")."[18]  Solidus is currently a debtor-in-possession in chapter 11 bankruptcy, and the Senior Creditors are actively participating in the bankruptcy case.  Plaintiffs are also involved in the bankruptcy and included on the list of Solidus's bankruptcy creditors.[19]

Also in December 2007, Solidus arranged DIP financing with the Senior Creditors.  On behalf of S&H and Sperry, Mr. Lumsden signed guarantees in support of these essential loans, which temporarily allowed Solidus to continue its operations.[20]  S&H and Sperry guaranteed that DIP financing with liens on most of their assets.[21]  On January 28, 2008, Judge Donovan entered an Order authorizing Solidus to obtain DIP financing, over Plaintiffs' objections.[22]

### C.    Plaintiffs sue S&H and Sperry in New York state court.

Plaintiffs sued S&H and Sperry in New York state court less than a month after the Bankruptcy Court approved Solidus's DIP financing.[23]  The Complaint seeks to abrogate S&H and Sperry's guarantees to support the SPA and DIP financing.  Plaintiffs allege that those guarantees were fraudulent transfers under Massachusetts law and seek a declaration voiding them, as well as an accounting.[24]  Defendants removed Plaintiffs' state court Action to this Court on March 11, 2008, and on March 13, Defendants moved to transfer this Action to Judge Donovan's Bankruptcy Court.

---

[18]  Lumsden Decl. ¶¶3-5.

[19]  Sussman Decl. Ex. H (List of Solidus bankruptcy creditors).

[20]  Sussman Decl. Ex. I (DIP Credit Agreement), at 1, 13, S-1, S-2; Lumsden Decl. ¶9.

[21]  Sussman Decl. Ex. I (DIP Credit Agreement), at 1-2; Lumsden Decl. ¶9.

[22]  Sussman Decl. Ex. J (Final DIP Order), at 2, 12, ¶1; *see also* Sussman Decl. Ex. K (S&H Noteholders' Limited Objections to Final DIP Order).

[23]  Sussman Decl. Exs. M (Complaint), at 1; J (Final DIP Order), at 2; L (Plaintiffs' bid), at 1.

[24]  Sussman Decl. Ex. M (Complaint), at ¶¶18-42.

**D.    Solidus sells most of its assets under a complex Asset Sale and Purchase Agreement with the Senior Creditors.**

Recently, Solidus, Defendants, and the Senior Creditors undertook a complex series of

transaction that affect Defendants' ownership structure. On March 31, 2008, the Senior

Creditors assigned nearly all of their senior secured debt to YT Acquisition Corporation ("YT").

That same day, Solidus, some of its subsidiaries, and YT consummated the transactions

contemplated by an Asset Sale and Purchase Agreement (the "APA"), under which (i) YT

acquired nearly all of the debtors' assets; and (ii) YT released many of its senior secured claims

against the debtors, but not against Defendants.[25] As a result of this transaction, YT now owns

S&H—which owns Sperry—and S&H and Sperry remain guarantors of the SPA obligations and

the Bankruptcy Court-approved DIP financing.

If Plaintiffs succeed in litigating the Action outside of Judge Donovan's supervision, it

would have serious consequences. For example, YT may be able to assert its rights under the

senior secured debt.[26] Additionally, invalidating the S&H and Sperry guarantees could amount

to a "Termination Event" pursuant to the Bankruptcy Court's Order approving the DIP

financing.[27]

As such, this Action is directly related to and will have an impact on the Solidus

bankruptcy proceedings.[28]

**E.    Plaintiffs, Defendants, and other relevant non-parties have no meaningful connection to New York.**

Plaintiffs concede that they reside in Massachusetts and Pennsylvania, not New York.[29]

Defendants are headquartered in Florida, and neither Defendant is incorporated in

---

[25]    *See* Herrick Decl. Ex. B (APA), at 1 (Recitals), §8.5.5(d) (Purchaser Release).

[26]    *See* Sussman Decl. Exs. E (Supplement No. 2), at §1; I (DIP Credit Agreement), at 1-2.

[27]    Sussman Decl. Ex. J (Final DIP Order), at ¶¶3, 17, 18; Lumsden Decl. ¶12.

[28]    Lumsden Decl. ¶12.

New York.[30]  Defendants' former parent, Solidus, is headquartered in San Francisco and is

currently in chapter 11 bankruptcy in the Central District of California.[31]  And all of Solidus's

Senior Creditors are deeply involved in Solidus's bankruptcy proceedings in California.[32]

**ARGUMENT**

**POINT I**

**PLAINTIFFS' ESTOPPEL ARGUMENT HAS NO FOUNDATION IN
THE LAW, THE FACTS, OR THE UNDERLYING AGREEMENTS.**

Plaintiffs contend that the Senior Creditors' or Solidus's arguments in the Bankruptcy

Court somehow bind Defendants and estop them from making this motion.  Remarkably, while

leading with this argument, Plaintiffs cite absolutely no relevant case law.  Rather, Plaintiffs

refer *only* to a forty-year-old Fifth Circuit decision in which the court *refused* to judicially estop

anyone and a New York Second Department case where a party *lied* in a prior proceeding and

the same party later took a directly contrary position.[33]  These two cases plainly do not support

Plaintiffs' estoppel argument and therefore have no bearing on this motion.

    **A.**    **In any event, Defendants cannot be judicially estopped
because they have not taken any inconsistent position.**

Even if the Senior Creditors' or Solidus's arguments could somehow bind Defendants,

Plaintiffs cannot—and do not even try to—meet the Second Circuit's three-factor judicial

estoppel test.  Under that test, courts consider whether a party (i) has taken a position that is

---

[29]  *See, e.g.*, Plaintiffs' Opposition to Defendants' Motion to Transfer Venue to the Central District of California, at 11 [hereinafter Plaintiffs' Opposition].

[30]  Sussman Decl. Ex. M (Complaint), at ¶¶3-4.

[31]  Lumsden Decl. ¶¶2, 13.

[32]  Lumsden Decl. ¶13.

[33]  Plaintiffs' Motion for Abstention and Remand Motion, at 7 [hereinafter Remand Motion]; *see Colonial Refrigerated Transp., Inc. v. Mitchell*, 403 F.2d 541, 550 (5th Cir. 1968); *Festinger v. Edrich*, 820 N.Y.S.2d 302, 32 A.D.3d 412 (2d Dep't 2006); *see also Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1336 n.8 (11th Cir. 2005) (refusing to apply doctrine of judicial estoppel because, among other things, it "only applies to a party that actually made a prior inconsistent statement" and some defendants were not parties to prior litigation).

clearly inconsistent with an earlier position; (ii) has persuaded a court to accept its earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (iii) would derive an unfair advantage if not estopped.[34]  Plaintiffs' various unsupported assertions do not satisfy any of these factors.[35]

*First*, the Senior Creditors and Solidus did not take any position in the Bankruptcy Court that is inconsistent with transferring this Action.[36]  Both the Senior Creditors and Solidus made clear on more than one occasion that they were "not asking the Court to rule that the guarantees given by [S&H and Sperry] are valid . . . [or] asking the Court to do anything with respect to those [guarantees]."[37]  They likewise stated that the Bankruptcy Court need not rule on the guarantees because they were "not before the court."[38]  And Plaintiffs' counsel even agreed that the validity of Defendants' guarantees for the DIP financing was a "question of fact" and that there was nothing that would "preclude [the Bankruptcy Court] from determining that down the road."[39]  Consequently, Judge Donovan's final DIP Order explicitly stated that it ***would not "impair the rights of any party"*** seeking to avoid any liens granted by S&H or Sperry.[40]  Plaintiffs' Complaint has now taken Defendants "down the road."  Their assertion that Judge Donovan cannot hear this case is an obvious attempt to sidestep the Bankruptcy Court.

---

[34]  *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

[35]  *See* Remand Motion, at 8 (failing to cite facts or law).

[36]  *See In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 248 (S.D.N.Y. 2004) ("There must be a true inconsistency between the statements in the two proceedings.  If the statements can be reconciled there is no occasion to apply an estoppel." (citation omitted)).

[37]  Herrick Decl. Ex. A (Jan. 25, 2008, Hr'g Tr.), at 95:9-13; *see also* Solomon Decl. Ex. C (Jan. 17, 2008, Hr'g Tr.), at 105:1-2 ("[N]on-bankruptcy rights are left unimpacted by this [DIP financing] order.").

[38]  Solomon Decl. Ex. C (Jan. 17, 2008, Hr'g Tr.), at 98:16, 104:25-105:2.

[39]  Herrick Decl. Ex. A (Jan. 25, 2008, Hr'g Tr.), at iii:18-21 (identifying Plaintiffs' counsel), 94:8-10.

[40]  Sussman Decl. Ex. J (Final DIP Order), at ¶50 (emphasis added).

This situation bears a striking resemblance to *Lloyd's*, where Judge Koeltl granted a motion to transfer to the Delaware Bankruptcy Court because, among other things, the bankruptcy court had already considered the plaintiffs' claims and had explicitly stated that the debtor's reorganization plan ***would not "impair[] their rights"*** to assert those claims.[41] So too here, where Judge Donovan's familiarity with Plaintiffs' objections to the DIP financing clearly favors transfer. Moreover, neither Solidus nor the Senior Lenders ever took the position that it would be inappropriate for Judge Donovan to resolve these issues if Plaintiffs challenged them. Since no one has yet asked the Bankruptcy Court to rule on the DIP financing guarantees, Defendants are not advancing an inconsistent position now by seeking to have the Bankruptcy Court address Plaintiffs' state-law claims.[42] Indeed, bankruptcy courts routinely decide state-law issues.[43]

***Second***, inconsistent results are impossible here because the DIP financing Order did not adjudicate Plaintiffs' state-law rights, about which the Bankruptcy Court expressly reserved judgment. And ***third***, Defendants would not gain any unfair strategic advantage by having the Bankruptcy Court—which is familiar with many of the relevant facts and is sensitive to the bankruptcy estate's administration—rule on an issue that would be properly before it.

---

[41]  *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 03 Civ. 7248(JGK), 2004 WL 224505, at \*5 (S.D.N.Y. Feb. 5, 2004).

[42]  Even if Solidus made an argument at odds with Defendants' position here, courts in this district limit judicial estoppel's application to inconsistent *factual* assertions, rather than inconsistent legal arguments. *WorldCom*, 308 F. Supp. 2d at 248 (rejecting plaintiffs' attempted use of judicial estoppel because, among other things, defendants' prior statements were legal arguments, not "factual assertion[s]").

[43]  *See, e.g., Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 645 (Bankr. S.D.N.Y. 2004) (noting that although Texas law would likely govern issues relating to fraudulent transfer claims, "federal courts routinely apply the law of other jurisdictions"); *In re Eden Associates*, 13 B.R. 578, 582 n.5 (Bankr. S.D.N.Y. 1981) (where there are no federal law concerns, the bankruptcy court must "apply the law to which the forum state . . . would have turned had the suit been filed in state court" (citations omitted)); *see also Kirschner v. Grant Thornton LLP (In re Refco, Inc. Securities Litigation)*, Ch. 11 Case No. 05-60006, Adv. No. 07 Civ. 11604, slip op. at 24 (S.D.N.Y. Apr. 21, 2008) (denying permissive abstention and remand despite fact that Trustee's claims were "based entirely on Illinois state law") (attached hereto as Herrick Decl. Ex. E).

Of course, Plaintiffs do not even claim that anyone advanced any arguments in connection with the SPA guarantees that could estop Defendants from making this motion.

### B.    Plaintiffs may not enforce forum selection clauses from contracts to which they are not parties.

Plaintiffs also assert that Defendants should be "contractually estopped" from transferring the Action because two contracts to which Plaintiffs are *not* parties contain clauses selecting New York courts.  But that completely ignores the black-letter rule that a contract may be enforced *only* by parties to that contract, absent unique circumstances not present here.[44]  This rule applies specifically to forum selection clauses.[45]

Not only the law but also the DIP Guarantee Agreement and the Subordination Agreement on which Plaintiffs rely undermine their estoppel claims.  *First*, the forum selection clause in the DIP Guarantee Agreement expressly provides that it has no third-party beneficiaries: "Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto . . .) any legal or equitable right, remedy or claim under or by reason of this Agreement."[46]  Because Plaintiffs are not parties to the DIP Guarantee Agreement, they cannot avail themselves of its forum selection clause.[47]  *Second*, the Subordination Agreement's forum selection clause explicitly states that it applies only to

---

[44]   *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 627 F. Supp. 1202, 1212 (S.D.N.Y. 1986) (claim for breach of contract can be brought only by party to contract); *see also McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994) ("[A] contract does not grant enforceable rights to nonsignatories.").

[45]   *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 670-72 (S.D.N.Y. 1997) (refusing to permit non-party to enforce forum selection clause); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296 (3d Cir. 1996) (forum selection clause can be enforced only by parties to contract); *accord ComJet Aviation Mgmt. LLC v. Aviation Investors Holdings Ltd.*, 303 A.D.2d 272, 272-73, 758 N.Y.S.2d 607, 608 (1st Dep't 2003) (refusing to permit non-party plaintiff to enforce forum selection clause).

[46]   Sussman Decl. Ex. I (DIP Credit Agreement), at §10.6; *see In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989) ("New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement. Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract." (citations omitted)).

[47]   Plaintiffs' reference to an "exculpatory clause" argument in footnote 16 of their Remand Motion is nonsensical as Defendants have made no such argument.  *See* Remand Motion, at 9 n.16.

disputes "with respect to" that agreement.[48]  Because Plaintiffs have brought no claim "with

respect to" the Subordination Agreement, that agreement's forum selection clause is a red

herring, and therefore has no force, effect, or relevance in this Action.

### POINT II

#### THE COURT HAS "RELATED TO" JURISDICTION BECAUSE THIS ACTION WILL HAVE MORE THAN A "CONCEIVABLE EFFECT" ON THE CALIFORNIA BANKRUPTCY PROCEEDING.

This Court has jurisdiction over this Action under 28 U.S.C. §1334(b), which provides

district courts with "original but not exclusive jurisdiction of all civil proceedings arising under

title 11, or arising in or *related to* cases under title 11."[49]  Discussing Section 1334(b), the United

States Supreme Court has stated that "Congress intended to grant comprehensive jurisdiction to

the bankruptcy courts so that they might deal efficiently and expeditiously with all matters

connected with the bankruptcy estate."[50]  Likewise, the Second Circuit's test for determining

"related to" jurisdiction under Section 1334(b) is whether a case's "outcome might have *any*

*conceivable effect* on the bankrupt estate."[51]  Under that expansive approach, numerous cases

have held that an action need not be against the debtor or its property to satisfy the "any

conceivable effect" test.[52]

---

[48]  Section 17 of the Subordination Agreement provides, in relevant part: ANY LEGAL ACTION OR PROCEEDING *WITH RESPECT TO THIS AGREEMENT* MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK OR OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK. Sussman Decl. Ex. C (Subordination Agreement), at §17 (emphasis added).

[49]  28 U.S.C. §1334(b) (emphasis added).

[50]  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quotations omitted); *accord Lloyd's*, 2004 WL 224505, at *4.

[51]  *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (emphasis added) (quotations and citations omitted).

[52]  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 414 (Bankr. S.D.N.Y. 2004); *accord Lloyd's*, 2004 WL 224505, at *5 (finding "related to" jurisdiction despite absence of debtor from action); *N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (stating that "related to" jurisdiction encompasses "more than simply proceedings involving the property of the debtor or the estate"), *aff'd*, 368 F.3d 86 (2d Cir. 2004); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2003 WL 23018802, at **1-2 (S.D.N.Y. Dec. 23, 2003) (adopting Judge Cote's reasoning in *WorldCom* to find "related to" jurisdiction despite absence of debtor from action).

And many cases have found "related to" jurisdiction over actions involving contractual interpretation that could alter the distribution among creditors—where the debtor is *not a party* to the action. For example, in *WorldCom*, former directors who were defendants in a state court securities fraud action removed to the district court where WorldCom's bankruptcy was pending.[53] In denying the plaintiffs' remand motion, the court rejected their argument that the claim "must enlarge or diminish the size of the bankruptcy estate" to support "related to" jurisdiction. Instead, the court held that the state action "related to" WorldCom's bankruptcy because the action had "*the potential* to alter the distribution of assets among the estate's creditors."[54] Likewise, in *Adelphia*, the court denied the plaintiffs' remand motion because the debtors' bylaws indemnified the defendants (former directors).[55] In so doing, the court found that the indemnification provision "by itself" was sufficient to support "related to" jurisdiction because through that potential indemnification the action's outcome could have a "conceivable effect" on the debtor's estate.[56] Similarly, in *Lloyd's*, defendants in a contract dispute removed a New York state court action and moved to transfer it to the District of Delaware, where their non-party former corporate parent was in bankruptcy.[57] The court denied the plaintiffs' motion to remand and granted the defendants' motion to transfer, finding that "*But for* the bankruptcy proceeding, this case would not have arisen."[58]

Here, as in *WorldCom* and *Adelphia*, the Action's outcome could affect the amount available to Solidus and Defendants' Senior Creditors and the relationships between those lenders and Plaintiffs. Among other things, abrogating the guarantees may amount to a breach of

---

[53] *WorldCom*, 293 B.R. at 312-13.

[54] *Id.* at 321-23 (emphasis added).

[55] *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529(LMM), 2005 WL 1026559, at *5 (S.D.N.Y. May 2, 2005) .

[56] *Id.*

[57] *Lloyd's*, 2004 WL 224505, at *1.

[58] *Id.* at *5 (emphasis in original).

Solidus's loan financing agreements with the Senior Creditors (as held by YT).[59]  The guarantees at issue here also give the same Senior Creditors (through their interest in YT) senior liens on numerous S&H and Sperry assets.[60]  Accordingly, the Action's outcome could directly impact the distribution of assets among those creditors and Plaintiffs.  Clearly, if successful, Plaintiffs' lawsuit would affect "the handling and the administration of the bankrupt estate" by casting doubt on the rights and obligations of Solidus, Defendants, their Senior Creditors, and Plaintiffs with respect to both the SPA debt and the DIP financing.[61]  Moreover, as in *Lloyd's*, Plaintiffs' DIP financing claims could not exist *but for* the Solidus bankruptcy proceedings, which alone is more than enough to satisfy the "conceivable effect" test.[62]

Therefore, Plaintiffs' attempt to distinguish *WorldCom* and *Adelphia* by arguing that those cases concerned claims that "directly implicated the assets of the bankrupt party" is at best puzzling, because that is precisely the case here.[63]  In any event, the *WorldCom* court specifically rejected that argument and denied the remand motion even though the action did not directly implicate the debtor's assets.[64]  And contrary to Plaintiffs' assertions, Solidus is not currently in a position to satisfy its debts.[65]  Here, as in *WorldCom*, the non-party debtor has a significant stake in the outcome.  That fact on its own is sufficient to support "related to" jurisdiction.[66]

---

[59]    Lumsden Decl. ¶12; Sussman Decl. Ex. J (Final DIP Order), at ¶¶3, 17, 18.

[60]    Sussman Decl. Exs. E (Supplement No. 2), at §2; I (DIP Credit Agreement), at 1-2.

[61]    *See Lloyd's*, 2004 WL 224505, at *4; *see also Adelphia*, 307 B.R. at 414 ("An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." (quotations omitted)); *WorldCom*, 293 B.R. at 317 (same).

[62]    As noted in the Transfer Reply Brief, YT now holds nearly all of the Senior Creditors' senior secured debt, the guarantees of which are the subject of this litigation. *See* Transfer Reply Brief, at 8-9.  The Action could also have a significant impact on YT's rights.

[63]    Remand Motion, at 10.  Defendants cite these cases in the Opening Transfer Brief, at 8.

[64]    *See WorldCom*, 293 B.R. at 322-23 (rejecting plaintiffs' argument that "to support 'related to' jurisdiction, the claim must enlarge or diminish the size of the bankruptcy estate and cannot merely alter the distribution among creditors").

[65]    *See* Remand Motion, at 9.

[66]    *See WorldCom*, 293 B.R. at 323.

## POINT III

### THE COURT MUST EXERCISE ITS JURISDICTION BECAUSE PLAINTIFFS HAVE NOT MET THEIR BURDEN ON REMAND OR ABSTENTION.

Plaintiffs assert that the Court should equitably remand the Action—under 28 U.S.C.

§1452(b)—or exercise permissive abstention—under 28 U.S.C. §1334(c)(1)—because the debtor

is not a party to the action, Plaintiffs' claims are not related to Solidus's bankruptcy, and this is

not a core proceeding.[67]  But uncontested facts and settled law flatly contradict this reasoning.

There is no dispute that Defendants made one of the guarantees challenged here in support of

Solidus's DIP financing, to which Plaintiffs objected in the Bankruptcy Court on the same

grounds they raise in the Complaint.  And in case after case courts have denied remand motions

even though the debtor was not a party to the action.[68]  As for mandatory abstention—under 28

U.S.C. §1334(c)(2)—Plaintiffs do not even try to prove, as they must, that the Action is capable

of being "timely adjudicated" in New York state court.

### A.    Plaintiffs do not, and cannot, justify equitable remand or permissive abstention.

Under Section 1452(b), "[t]he court to which [a] claim or cause of action is removed may

remand such claim or cause of action on any equitable ground," while under Section 1334(c)(1) a

court may permissively abstain from hearing an action "related to" a bankruptcy case "in the

interest of justice, or in the interest of comity with State courts or respect for State law."  As

Plaintiffs correctly state, courts go through "virtually the same" analysis in deciding equitable

remand and permissive abstention motions, and in doing so consider the following factors:[69]

---

[67]    Remand Motion, at 16.

[68]    *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529(LMM), 2005 WL 1026559, at *6 (S.D.N.Y. May 2, 2005); *WorldCom*, 293 B.R. at 317, 324; *Lloyd's*, 2004 WL 224505, at *5.

[69]    Courts generally decide equitable remand and permissive abstention together.  *See, e.g., Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 18 (S.D.N.Y. 2002) ("[B]ecause remand is not warranted in this case, neither is discretionary abstention."); *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 Civ. 0277 (LAP), 1995 WL 489711, at *9 (S.D.N.Y. Aug. 14, 1995) ("[R]emand is not

(1) the effect on the efficient administration of the bankruptcy estate; (2) the
extent to which issues of state law predominate; (3) the difficulty or unsettled
nature of the applicable state law; (4) comity; (5) the degree of relatedness or
remoteness of the proceeding to the main bankruptcy case; (6) the existence of the
right to a jury trial; and (7) prejudice to the involuntarily removed defendants.[70]

The burden is on Plaintiffs as the movants to show that the factors on balance favor equitable

remand and permissive abstention, and a court will deny the motion even when some factors

support it.[71]  Indeed, once it obtains jurisdiction, this Court has a "***virtually unflagging***

***obligation to exercise [its] jurisdiction*** . . . and may abstain only for a few extraordinary and

narrow exceptions."[72]  Plaintiffs fail to carry their burden on each and every one of these factors.

### 1.    Degree of Relatedness or Remoteness
### to Main Bankruptcy Case (factor five)[73]

Numerous facts demonstrate the close relationship between the Action and the Solidus

bankruptcy proceedings, none of which Plaintiffs dispute.  Those facts include: (i) one of the

guarantees that Plaintiffs challenge in this Action was made by Defendants in support of

Solidus's DIP financing in the bankruptcy; (ii) Judge Donovan approved that DIP financing,

---

warranted in the instant case; accordingly, neither is permissive abstention."). Courts typically consider the
following permissive abstention factors: (1) the effect on the efficient administration of the estate if a court
recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues,
(3) the difficulty or unsettled nature of applicable state law, (4) the presence of a related proceeding in state
court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. §1334, (6) the
degree of relatedness of the proceeding to the main bankruptcy case, (7) the substance rather than form of
an asserted core proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to
allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden
on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court
involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the
presence in the proceeding of nondebtor parties. *WorldCom*, 293 B.R. at 332.

[70]   *Renaissance Cosmetics,* 277 B.R. at 14-18 (analyzing factors and denying remand and permissive abstention);
*see also Nemsa*, 1995 WL 489711, at **8-9 (analyzing same factors and denying remand and permissive
abstention); *Lloyd's*, 2004 WL 224505, at *9 (applying same factors and denying equitable remand).

[71]   *Nemsa*, 1995 WL 489711, at **8-9 (denying remand and permissive abstention because "on balance" factors
favored retaining federal jurisdiction); *see also Renaissance Cosmetics,* 277 B.R. at 14-17 (denying remand and
permissive abstention despite fact that not all factors weighed against remand or permissive abstention);
*Blackacre Bridge Capital LLC v. Korff (In re River Center Holdings, LLC)*, 288 B.R. 59, 71 (Bankr. S.D.N.Y.
2003) (denying remand "although certain factors favor remand").

[72]   *WorldCom*, 293 B.R. at 332 (emphasis added).

[73]   The fifth factor is "one of the more significant" in the analysis and influences consideration of the other factors.
*River Center*, 288 B.R. at 70.

while reserving judgment on Plaintiffs' objections, which raise the exact same issues as the

Complaint; (iii) striking the DIP financing guarantees could cause Solidus to default on its

Bankruptcy Court-approved DIP loans and thus impact the distribution of assets among Plaintiffs

and the Senior Creditors; (iv) Plaintiffs have appeared before Judge Donovan in the Bankruptcy

Court and are listed as creditors in Solidus's bankruptcy; and (v) every other relevant non-party

is currently embroiled in the Solidus bankruptcy in California.

Time and again courts have denied equitable remand and permissive abstention motions

where, as here, the outcome of the state action would so directly affect the bankruptcy estate.[74]

Given that Plaintiffs raised the same objections to the DIP financing guarantees that they voice in

the Complaint, having an effect on the bankruptcy is this Action's *raison d'être*—and directly

contradicts Plaintiffs' assertion that "only non-bankruptcy rights are implicated in this action."[75]

## 2. Efficient Administration of the Bankruptcy Estate (factor one)

Efficiency requires letting Judge Donovan decide the Action because he (i) is already

familiar with the underlying agreements; (ii) has heard Plaintiffs' objections to the DIP financing

guarantees; (iii) knows the relevant record; and (iv) understands Defendants' recent ownership

changes (effected through the bankruptcy process) involving Defendants.[76] Thus, while Judge

Donovan has an "overall view" of the Action and the Solidus bankruptcy, a New York state

---

[74] *See, e.g., River Center*, 288 B.R. at 70-71 (relatedness factor tipped against equitable remand in dispute between second-lien lenders and guarantor of debtor's obligations); *Renaissance Cosmetics*, 277 B.R. at 16-18 (relatedness factor weighed against equitable remand and permissive abstention where "the outcome of the Action will significantly effect [sic] both the size and administration of [the bankruptcy] estate"); *cf. Nemsa*, 1995 WL 489711, at **8-9 (denying remand and permissive abstention because "degree of relatedness of the instant case to the [bankruptcy proceeding] does not favor remand").

[75] Remand Motion, at 16.

[76] *Lloyd's*, 2004 WL 224505, at *9 (concluding that "fair administration of the bankruptcy estate" weighed against remand); *River Center*, 288 B.R. at 69 (noting that efficiency was "one of the most important" factors and denying remand); *Renaissance Cosmetics*, 277 B.R. at 16-18 (efficiency factor weighed against equitable remand and permissive abstention where bankruptcy court was "intimately familiar with the parties and the factual history of this case"); *Nemsa*, 1995 WL 489711, at **8-9 (noting that where remand or permissive abstention "would only entail a duplication of effort and multiplicity of litigation," remand and permissive abstention were not appropriate).

- 17 -

judge faced with deciding the guarantees' validity, would first need to learn about countless

relevant agreements, review a substantial existing record in the Bankruptcy Court, learn about

recent complex transactions involving S&H and Sperry, and keep abreast of the constantly

evolving state of Solidus's bankruptcy.[77]  Putting the Action before Judge Donovan will avoid

that duplication.  Moreover, coordinating the Action and the Solidus bankruptcy proceedings will

greatly reduce the risk of inconsistent rulings about Solidus's, Defendants', their Senior

Creditors' (and owners'), and Plaintiffs' rights.[78]

### 3.   The Extent to Which State Law Issues Predominate and the Difficulty or Unsettled Nature of Applicable State Law (factors two and three)

Because Plaintiffs allege *Massachusetts* law violations only, they do not—and cannot—

show that the Action should be sent to New York because of difficult or unsettled issues

involving New York law.  In any event, courts in this district have often held that state law

claims—including fraudulent transfer, breach of contract, breach of fiduciary duty, malpractice,

fraud, fraudulent concealment, and corporate waste—are not so novel or complex as to warrant

equitable remand or permissive abstention.[79]  The Action involves nothing more complex than

the interpretation of two contracts with which Judge Donovan is already familiar.  And

---

[77]   *River Center*, 288 B.R. at 71 (quoting *In re Brentano's, Inc.*, 27 B.R. 90, 92 (Bankr. S.D.N.Y. 1983)); *see also Renaissance Cosmetics*, 277 B.R. at 16-18 (relying on, among other things, bankruptcy court's familiarity with parties and facts in denying permissive abstention and remand).

[78]   Plaintiffs' suggestion that this Action would need to be withdrawn from the Bankruptcy Court is simply incorrect. *See* Remand Motion, at 16. In reality, 28 U.S.C. §157 says just the opposite:  "A bankruptcy judge *may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11*." (emphasis added).

[79]   *See, e.g., Renaissance Cosmetics*, 277 B.R. at 14-16, 18 ("lack of complexity [of state law claims involving, among other things, alleged fraudulent conveyances] significantly undercuts the degree to which the state law factor weighs in favor of remand to the New York courts" or permissive abstention (quotations and brackets omitted)); *see also River Center*, 288 B.R. at 69-70 (same regarding remand of dispute regarding validity of guarantee); *Nemsa*, 1995 WL 489711, at **7-9 (same regarding permissive abstention and remand of various claims including breach of contract and fraudulent conveyance); *Neuman v. Goldberg*, 159 B.R. 681, 684, 688 (S.D.N.Y. 1993) (same regarding permissive abstention and remand of breach of fiduciary duty and breach of contract claims), *disagreed with on other grounds, Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446 (2d Cir. 2005).

bankruptcy judges address state law matters, such as the contract guarantee disputes at issue
here, "on a regular basis."[80]

### 4.    Comity (factor four)

It is hard to see how comity, which "focuses on the state's interest in developing its law
and applying its law to its citizens," favors remand when Plaintiffs do not allege a single
violation of New York law, none of the Plaintiffs are New York residents, and neither Defendant
is headquartered or incorporated in this state.[81]  These circumstances, combined with the absence
of any novel or complex state law issue or any other meaningful connection to New York law,
"neutralize[] any comity concerns that would favor remand."[82]  Plaintiffs' forum-shopping-
motivated decision to file the Complaint in a New York court does not give this state an interest
in a case alleging violations of another state's law.

### 5.    Availability of Jury Trial and Prejudice to Involuntarily
### Removed Defendants (factors six and seven)

Both the availability of a jury trial and prejudice to Defendants are factors that do not
support granting the motion because (i) Plaintiffs seek equitable relief only and are therefore not
entitled to a jury trial;[83] and (ii) Defendants, having voluntarily removed the Action, would
obviously suffer no prejudice by keeping it in federal court.

\*    \*    \*

Plaintiffs' cases in support of remand and permissive abstention do not help their cause
because each one (i) denies remand and abstention; (ii) deals with state court actions that are far

---

[80]  *River Center*, 288 B.R. at 70 (noting, in contract guarantee dispute, that bankruptcy judges "address matters of state law on a regular basis").

[81]  *Renaissance Cosmetics*, 277 B.R. at 16 (quotations omitted); *see* Compl. ¶¶20, 25, 28, 33, 38, 41.

[82]  *Renaissance Cosmetics*, 277 B.R. at 16 (refusing to grant permissive abstention or remand because, among other things, "New York has little interest in this lawsuit").

[83]  *See, e.g., In re Estate of Rivara*, 785 N.Y.S.2d 469, 471, 12 A.D.3d 611, 612 (2d Dep't 2004) ("[B]ecause the petitioner's claim sounds in equity, she was not entitled to a jury trial."); *City of New York v. Philips*, 709 N.Y.S.2d 417, 417, 272 A.D.2d 568, 568-69 (2d Dep't 2000) ("[A]s the complaint sought equitable relief, the court properly struck the appellants' demand for a jury trial.").

- 19 -

advanced; or (iii) involves different facts that lead to different outcomes. For example, in

*Renaissance Cosmetics v. Dev. Specialists Inc.*, the court denied the plaintiffs' motion for

remand and discretionary abstention because they failed to satisfy the remand factors discussed

above.[84] *Home Ins. Co.* concerned diversity—not "related to"—jurisdiction and did not even

arise in a bankruptcy context.[85] Also, contrary to Plaintiffs' arguments here, in *Luis*, the court

held that "abstention from the exercise of federal jurisdiction is the exception, not the rule."[86]

*NTL* involved a complex, multi-party securities litigation where the state court judge had already

ordered arbitration, and in *Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.*, the state action had

been ongoing for eighteen months before the bankruptcy filing.[87] Plainly, these cases do not

support Plaintiffs' motion.

### B.    Mandatory abstention is inappropriate because it would interfere with and prolong the California bankruptcy proceeding.

Plaintiffs cannot prove that the Action is capable of being "timely adjudicated" in state

court, which is an essential element of a mandatory abstention motion under 28 U.S.C.

§1334(c)(2).[88] That failure of proof is fatal to the motion because "[a] party is not entitled to

---

[84]    *See Renaissance Cosmetics*, 277 B.R. at 11-19.

[85]    *Home Ins. Corp. v. Leprino Foods Co.*, No. 02 Civ. 1044(DAB), 2002 WL 1315599 (S.D.N.Y. June. 14, 2002).

[86]    Remand Motion, at 14; *Hackeling v. Rael Automatic Sprinkler Co. (In re Luis Elec. Contracting Corp.)*, 165 B.R. 358, 366 (Bankr. E.D.N.Y. 1992) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976)) (quotations omitted).

[87]    *NTL, Inc. v. CRT Capital Group LLC*, 295 B.R. 706, 716 (Bankr. S.D.N.Y. 2003); *Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.*, No. 99 Civ. 11248(SHS), 2000 WL 890191, at *1 (July 5, 2000).

[88]    *Renaissance Cosmetics*, 277 B.R. at 12 (quotations omitted). Courts typically consider the following six factors: (1) the abstention motion was "timely" brought; (2) the action is based upon a state law claim; (3) the action is "related to" a bankruptcy proceeding, as opposed to "arising under" the Bankruptcy Code or "arising in" a case under the Bankruptcy Code; (4) the sole federal jurisdiction for the action is section 1334; (5) there is an action "commenced" in state court; and (6) the action is capable of being "timely adjudicated" in state court. 28 U.S.C. §1334(c)(2) provides: "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

mandatory abstention if it fails to prove *any one* of the statutory requirements."[89]  While

Plaintiffs correctly point out that the "Court cannot simply assume what has neither been pleaded

nor proven,"[90] they offer nothing other than naked assertions or attempts to shift the burden to

Defendants.[91]

Here, each of the four timeliness factors that courts consider for mandatory abstention

weigh against remand: backlog of the state court's calendar; whether the state court proceeding

would prolong the administration or liquidation of the estate; status of the bankruptcy

proceeding; and complexity of issues.[92]  In *Renaissance Cosmetics*, a case that Plaintiffs cite, the

court did not abstain on mandatory grounds because, among other things, (i) the average contract

dispute in New York County Commercial Division, where "the backlog and delay in that court is

well-documented," took over 550 days;[93] and (ii) the New York state court action was "at the

starting line," while the related bankruptcy proceeding was "well advanced."[94]  So "even the

most efficient court system" could not possibly "avoid interference with the Bankruptcy

---

[89]  *WorldCom*, 293 B.R. at 331 (emphasis added); *see also Renaissance Cosmetics,* 277 B.R. at 13; *Bondi v. Grant Thornton Int'l*, 322 B.R. 44, 49-50 (S.D.N.Y. 2005).

[90]  Remand Motion, at 13.

[91]  *WorldCom*, 293 B.R. at 331; Remand Motion, at 14; *see also Kirschner*, Adv. No. 07 Civ. 11604, slip op. at 22-23 (denying mandatory abstention because plaintiff "has not met its burden of proving that its claims can be 'timely adjudicated' in Illinois state court") (attached hereto as Herrick Decl. Ex. E); *Janazzo v. Fleetboston Fin. Corp.*, No. 01 C 6939, 2002 U.S. Dist. LEXIS 451, at *11 (N.D. Ill. Jan. 15, 2002) (rejecting plaintiff's mandatory abstention argument because "plaintiff ha[d] failed to present any evidence that [the] matter could be timely adjudicated in the state court"); *In re Georgou*, 157 B.R. 847, 851 (Bankr. N.D. Ill. 1993).

[92]  *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 74 B.R. 651, 654-55 (N.D. Ill. 1987).  *See also In re Gen. Am. Commc'ns Corp.*, No. 83-B11495, 1990 Bankr. LEXIS 2985, at *23 (Bankr. S.D.N.Y. Dec. 7, 1990) (denying remand motion and relying on *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 74 B.R. 651, 654-55 (N.D. Ill. 1987)); *Janazzo*, 2002 U.S. Dist. LEXIS 451, at *12; *Georgou*, 157 B.R. at 851.

[93]  *Renaissance Cosmetics*, 277 B.R. at 13-14.

[94]  *Id.* at 14 (quotations omitted); *see also Neuman*, 159 B.R. at 688 (rejecting motion for mandatory abstention because related bankruptcy proceedings were "well advanced" and state-court action was "at the starting line").

Proceeding."[95] But New York courts are far from "the most efficient court system," where the latest data show that the average "contract" action takes more than 700 days to process.[96]

While no state judge has been assigned to the Action, let alone considered its merits or the underlying agreements, Judge Donovan has presided over the Solidus bankruptcy for six months, heard Plaintiffs' objections to the DIP financing, and is well aware of the underlying agreements and current developments. In other words, the state court is still at the "starting line" while Judge Donovan's Bankruptcy Court is "well advanced." And although Plaintiffs do not raise novel or complex state law issues, the DIP financing, the SPA obligations, and the recent developments involving YT's acquisition of S&H, among other bankruptcy details, involve complex factual and contractual questions—with which Judge Donovan is already familiar.

Mandatory abstention is also not warranted here because Plaintiffs allege violations of Massachusetts—not New York—law. So New York state courts are no better suited to deal with the legal issues in this Action than bankruptcy courts (including Judge Donovan), which frequently consider such claims.[97]

Finally, none of the cases Plaintiffs cite are remotely applicable to the facts here. Three of their cases concerned state court actions that were filed *before* the related bankruptcy proceedings began.[98] But here, the Action has not advanced *at all* in state court, where no judge

---

[95]    *Renaissance Cosmetics*, 277 B.R. at 14 (quotations omitted); *see also Kirschner*, Adv. No. 07 Civ. 11604, slip op. at 24 (denying permissive abstention and remand where "Illinois state courts have invested little or no time in the case") (attached hereto as Herrick Decl. Ex. E).

[96]    THE COMMERCIAL DIV. OF THE SUP. CT. OF THE STATE OF N.Y., CELEBRATING A TWENTY-FIRST CENTURY FORUM FOR THE RESOLUTION OF BUS. DISPUTES 6 (2006), *available at* http://www.nycourts.gov/courts/comdiv/PDFs/ComDiv-Jan06.pdf.

[97]    *See, e.g., Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 645 (Bankr. S.D.N.Y. 2004) (noting that although Texas law would likely govern issues relating to fraudulent transfer claims, "federal courts routinely apply the law of other jurisdictions"); *In re Eden Associates*, 13 B.R. 578, 582 n.5 (Bankr. S.D.N.Y. 1981) (where there are no federal law concerns, the bankruptcy court must "apply the law to which the forum state . . . would have turned had the suit been filed in state court" (citations omitted)).

[98]    *See Deep v. Boies*, No. 1:05-CV-1187(FJS/RFT), 2007 WL 169940, at *2 (N.D.N.Y. Jan. 17, 2007); *Von Richthofen v. Family M. Foundation Ltd.*, 339 B.R. 315, 320 (S.D.N.Y. 2005); *Covanta Onondaga Ltd. v. Onondaga Cty. Resource Recovery Agency*, 281 B.R. 809, 812 (N.D.N.Y. 2002).

has even been assigned, so no efficiencies would be gained by sending it to New York state court now. Plaintiffs' cases are also off the mark for other reasons. In *Amanat*, the plaintiffs alleged "exclusively" New York State law claims, and in *Fieger*, the plaintiff sued on a contract of which it claimed to be a beneficiary.[99] Here, Plaintiffs have asserted no claims under New York law and have not alleged that they are beneficiaries of the contracts allegedly at issue. And *S.G. Phillips* involved a "core" bankruptcy proceeding to which mandatory abstention under Section 1334(c)(2) is simply inapplicable.[100]

---

[99] *Amanat v. Wollmuth Maher & Deutsch, LLP (In re Marketxt)*, 338 B.R. 574, 582 (Bankr. S.D.N.Y. 2005); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 391-93 (2d Cir. 2001).

[100] *S.G. Phillips Constructors, Inc. v. City of Burlington*, 45 F.3d 702, 708 (2d Cir. 1995).

## CONCLUSION

For the foregoing reasons, S&H and Sperry respectfully request that the Court grant their

Motion to Transfer Venue to the Central District of California and deny Plaintiffs' Motion for

Abstention and Remand.

Dated: New York, New York  
     April 22, 2008

O'MELVENY & MYERS LLP

By:_____  
    Gary Svirsky  
    Peter Herrick  
Times Square Tower  
7 Times Square  
New York, New York 10036  
Telephone:  212-326-2000  
Facsimile:  212-326-2061  
gsvirsky@omm.com  
pherrick@omm.com

*Attorneys for Defendants S&H Marketing, Inc.*  
*f/k/a S&H Greenpoints, Inc., and The Sperry*  
*and Hutchinson Company, Inc.*