SULLIVAN & WORCESTER LLP
Andrew T. Solomon (AS 9200)
1290 Avenue of the Americas
New York, NY 10104
Tel. 212-660-3000
Fax 212-660-3001

*-and-*

Laura Steinberg (LS 0276), *pro hac vice*
Joshua L. Solomon (JS 5848), *pro hac vice*
One Post Office Square
Boston, MA 02109
Tel. 617-338-2800
Fax 617-338-2880
*Counsel to Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER BEINECKE, III, EAGLIS ALTERNATIVE INVESTMENTS I, LLC, GEOFFREY T. FREEMAN, GRAHAM GUND, HENRY A. JORDAN, JENNIFER C. McNEIL, J. STUART MOORE, and CARL NOVOTNY, TRUSTEE of the S&H NOMINEE TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> S&H MARKETING, INC. f/k/a S&H GREENPOINTS, INC. and THE SPERRY AND HUTCHINSON COMPANY, INC., <br><br> Defendants. | 08-Civ.-2483 (GBD) <br><br> **ELECTRONICALLY FILED** |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT**
**OF THEIR MOTION FOR ABSTENTION AND REMAND**

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................ i

TABLE OF AUTHORITIES .................................................................................................... ii

      I.      Defendants Are Judicially Estopped from Seeking to Prevent Plaintiffs from Litigating in New York State Court........................................................................ 1

      II.     This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims. ................... 3

      III.    This Action Is Subject to Mandatory Abstention and Remand. ............................. 6

      IV.   Equitable Factors Favor Permissive Abstention and Remand................................ 9

CONCLUSION........................................................................................................................ 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

176-60 Union Turnpike, Inc. v. Howard Beach Fitness Ctr., Inc.,
   209 B.R. 307 (S.D.N.Y. 1997)..................................................................................3

Acolyte Electric Corp. v. New York, 69 B.R. 155 (Bankr. E.D.N.Y. 1986)..............................7, 8

In re Adelphia Communications Corp., 367 B.R. 84 (S.D.N.Y. 2007) ...........................................1

In re Amanat, 338 B.R. 574 (Bankr. S.D.N.Y. 2005)..................................................................6

In re Bradlees, Inc., No. 04 Civ. 5500 (HB), 2005 WL 106794 (S.D.N.Y. Jan. 19, 2005).....6, 7, 8

Buechner v. Avery, No. 05 Civ. 2074 (PKC),
   2005 WL 3789110 (S.D.N.Y. Feb. 14, 2005)................................................................10

Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,
   03 Civ. 7248 (JGK), 2004 WL 224505 (S.D.N.Y. Feb. 5, 2004)..............................2

In re Chargit, Inc., 81 B.R. 243 (Bankr. S.D.N.Y. 1987) .......................................................3, 4

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006)................................................2

In re Finnie, No. 05-16373, 2007 WL 1574294 (Bankr. S.D.N.Y. May 29, 2007)....................3, 4

Linardos v. Fortuna, 157 F.3d 945 (2d Cir. 1998).................................................................3

Neuman v. Goldberg, 159 B.R. 681 (S.D.N.Y. 1993)...............................................................8

Renaissance Cosmetics, Inc. v. Development Specialists Inc.,
   277 B.R. 5 (S.D.N.Y. 2002).................................................................................8

U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A., Number CIV 3099 JGK,
   2001 WL 300735 (S.D.N.Y. March 27, 2001) ............................................................1

Uzdavines v. Weeks Marine, Inc., 418 F.3d 138 (2d Cir. 2005) ..................................................2

In re Worldcom, Inc. Securities Litigation, 294 B.R. 553 (S.D.N.Y. 2003) ...................................5

### FEDERAL STATUTES

28 U.S.C. § 1334(c)(1)...............................................................................................9, 10

28 U.S.C. § 157(c)(1)....................................................................................................9

# STATE STATUTES

Mass. Gen Laws c. 109A, §§ 5(a)(1) ..................................................................................10

6 N.Y. Debtor & Creditor Law § 282 ...............................................................................10

I.    **Defendants Are Judicially Estopped from Seeking to Prevent Plaintiffs from Litigating in New York State Court.**

Defendants do not contest that Solidus served as defendants' privy when arguing to the

bankruptcy court that it would be inappropriate for that court to determine the validity of

defendants' guarantees.[1] With this tacit admission, defendants' sole substantive argument

against judicial estoppel is that they now say nothing different.

The transcripts prove otherwise. Defendants' privy Solidus and its lenders joined forces

to convince the bankruptcy court that it should not (1) assess the validity of the guarantees

because that is an issue of state law ("We are not asking your Honor . . . to put your imprimatur

on guarantees from the S&H entities. That's a matter of state law."); (2) determine how the

guarantees should be addressed ("We're also not asking you to establish a review process for the

validity of our debt vis-à-vis S&H."); (3) consider whether the application of state law would

result in revocation of the guarantees (because "that is our problem"); or (4) limit the effect of

the guarantees ("The S&H noteholders . . . can't seek some additional benefits from this order

in the form of . . . limiting of guarantees."). See Pl. Opening Br. at 7. Of course defendants

cannot and do not explain how these statements could be consistent with defendants' efforts to

send this action to the bankruptcy court for adjudication.[2]

---

[1] Nor could defendants have reasonably so argued. The facts set out in plaintiffs' opening brief are underscored by Solidus' recent request that the bankruptcy court extend its legal representation by Cooley Godward Kronish LLP. Solidus there stated that Cooley's representation of defendants in this action "has not been and will not be adverse to the Debtors or their estates *in any way*." See May 7, 2008 Declaration of Joshua L. Solomon ("J. Solomon Decl."), Ex. A, at 5 (emphasis added). In addition, Solidus' Chief Restructuring Officer signed the DIP Loan documents not only on Solidus' behalf, but also on behalf of defendants. See Pl. Opening Br. at 5.

[2] Defendants note in passing that, inconsistency aside, judicial estoppel is unavailable because the doctrine applies only to factual contentions. Oppos. at 10 n.42. But their representations to the bankruptcy court concerned the nature of plaintiffs' notes and defendants' guarantees (i.e., *facts* about those instruments) and the jurisdictional effect of those facts. The issue was thus a mixed one of fact and law, to which courts in this district apply judicial estoppel. See, e.g., In re Adelphia Commc'ns Corp., 367 B.R. 84 (S.D.N.Y. 2007) (whether a claim was equitably moot); U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A., No. CIV 3099 JGK, 2001 WL 300735, at *11 (S.D.N.Y. March 27, 2001) (whether a party had standing to assert claims).

In lieu of grappling with the import of their conflicting assertions in the bankruptcy court, defendants invoke the "no harm, no foul" rule. They point to the lack of any bankruptcy court ruling on the validity of the guarantees. Oppos. at 9, 10. To apply judicial estoppel, however, does not require a ruling on the merits of plaintiffs' claims. Rather, judicial estoppel flows from the inconsistency between defendants first persuading the bankruptcy court that it could not adjudicate plaintiffs' claims and subsequently advising this Court that the bankruptcy court is the only proper forum for such claims.[3]

Embroidering on their lack of harm theme, defendants next suggest without elaboration that plaintiffs would suffer no prejudice if defendants were allowed to change their position.[4] Oppos. at 10. Defendants conveniently ignore the fact that their forum selection shell game has caused plaintiffs significant delay in the adjudication of their claims. Were defendants permitted to change course, plaintiffs would also suffer the loss of their chosen forum, which is entitled to "great weight." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006).

Defendants' argument that plaintiffs cannot enforce forum selection clauses in contracts to which plaintiffs are not party (Oppos. at 11-12) is equally unavailing. Estoppel is an equitable doctrine. The fact that defendants entered into multiple contracts with New York forum

---

[3] Defendants' citation to Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc., 03 Civ. 7248 (JGK), 2004 WL 224505 (S.D.N.Y. Feb. 5, 2004), with the assertion that "[t]his situation bears a striking resemblance to Lloyd's," (Oppos. at 10), is puzzling. There was no claim of judicial estoppel at issue in Lloyd's. Nor was there any indication that the defendants in that case (or their privy) had earlier argued successfully against bankruptcy court adjudication.

[4] Defendants misstate the law in claiming that the there is a three-part judicial estoppel "test" that requires a showing of prejudice or unfair advantage. See Oppos. at 8-9. In reality, the Second Circuit recognized that the Supreme Court "cautioned that it was not establishing inflexible prerequisites." Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 147 (2d Cir. 2005) (internal quotation marks omitted). The Second Circuit did not hold that prejudice must be shown to have resulted from another's inconsistent positions, but rather declared that such a showing makes judicial estoppel "especially" warranted. Id. (internal quotation marks omitted).

selection clauses, *including contracts concerning the very guarantees at issue here*, is an equitable factor that the Court can consider when applying the judicial estoppel doctrine.

## II.    This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims.

The breadth of "related to" jurisdiction is not limitless.  In focusing on the requirement that an action have a "conceivable effect" on a bankruptcy estate, defendants choose to overlook the additional requirement that the effect be more than mere speculation.  See 176-60 Union Turnpike, Inc. v. Howard Beach Fitness Ctr., Inc., 209 B.R. 307, 313 (S.D.N.Y. 1997); see also In re Chargit, Inc., 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987) ("Although the optimist may argue that anything is 'conceivable,' any practical definition of this term of art must be tempered by a measure of reasonableness.").  In fact, as this district's bankruptcy court recently held, not only must the effect not be speculative, but it also cannot be remote.  See In re Finnie, No. 05-16373, 2007 WL 1574294, at *12 (Bankr. S.D.N.Y. May 29, 2007).

Defendants have not satisfied these requirements.  As the removing parties, defendants bear the burden of demonstrating jurisdiction.  Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998).  Satisfying that burden requires more than a conclusory assertion that the outcome of this case could somehow affect the Solidus bankruptcy.  Defendants must *show* that to be so, not just assert it.  Repetition is not a substitute for the necessary showing.  Defendants repeatedly assert that a successful attack on their guarantees could undo the entire DIP financing.  What is missing, however, is any demonstration, or even an explanation, of *how* that could happen. Further, even if defendants had established that cancellation of their guarantees could indeed reasonably result in loss of the entire financing, defendants have not shown that at this point,

with Solidus in virtual liquidation,[5] loss or alteration of the financing would affect the estate's administration, taking into account such factors as the value of the debtor's assets, the size of its estate, and the overall amount of debt. See In re Chargit, 81 B.R. at 247 (finding no "related to" jurisdiction because the potential effect on the distribution of assets was "speculative and insubstantial" in light of the value of those assets).

The recent Finnie opinion makes clear that merely articulating a possible effect on the bankruptcy is insufficient, without a showing that such an effect is possible and non-remote. An agreement among the plaintiff law firm, the defendant government agency, and the defendant debtor required that the agency withhold from payments owed to the debtor fees that the debtor owed to the firm. The agency inadvertently paid the full proceeds to the debtor. The firm sued, with federal jurisdiction purportedly based on possible effects of the debtor's bankruptcy. The court noted that the only theory that could support "related to" jurisdiction was a claim that if the firm succeeded, the agency would seek recoupment from the debtor. The court rejected that theory as unsupported and too remote:

> While this would alter the Debtor's rights, liabilities, options or freedom of action, it is contingent upon [plaintiff] prevailing in its liability action against the [agency] and the [agency] determining that it will seek recoupment from the Debtor. As shown above, the likelihood of the [agency] seeking recoupment is not ripe. The Court, therefore . . . finds that although the possibility of recoupment may "conceivably" be "related to" the Debtor's estate, it is so "only remotely," and does not reach the threshold of relatedness required . . . .

Finnie, 2007 WL 1574294, at *13. Similarly here, defendants' theory is speculation, dependent on unsupported assumptions as to how the DIP lenders would respond to plaintiffs' success in

---

[5] On April 25, 2008, Solidus filed a request to set a bar date, in which it explained that (1) the bankruptcy court had already authorized the sale of substantially all of Solidus' assets; (2) with the exception of a particular non-core business, Solidus has no ongoing business operations; and (3) a liquidating plan of reorganization and conversion to a chapter 7 bankruptcy are under consideration. See J. Solomon Decl. Ex. D, at 3-4.

- 4 -

this action against defendants, and further assumptions as to how that hypothetical response might impact the bankruptcy.

Furthermore, the record before the Court contains strong indications that loss of the guarantees would *not* in fact unwind the financing. As previously noted, when presenting the DIP financing to the bankruptcy court, the lenders themselves expressly acknowledged and assumed the risk that the guarantees could be declared invalid ("that is our problem"). The possibility that the guarantees might not survive challenge plainly did not deter the lenders from entering into the DIP financing. In addition, consistent with the lenders' and debtor's assumption of that risk, the bankruptcy judge explicitly held that the financing was *not* dependent on the validity of the guarantees. In his order approving the loan, Judge Donovan held that "nothing in this Final Order . . . prejudices, adjudicates, alters or modifies in any way the respective rights and obligations of any party in any way relating to the S&H Entities, which are not Debtors in these Chapter 11 Cases." Sussman Decl. Ex. J (Final Loan Order) at 41. The court also held that "[a]ll parties, including . . . the S&H Noteholders . . . reserve *all* of their respective rights vis-à-vis the S&H Entities . . . including the right to enforce any existing agreements among such parties *and to challenge any transactions entered into with or with respect to the S&H Entities.*" Id. (emphasis added). Far from suggesting that the DIP financing was contingent upon the guarantees, that their revocation would be inconsistent with or would destroy the financing, or that administration of the estate would be impaired by such events, the bankruptcy court explicitly preserved plaintiffs' rights to pursue the claims raised here.[6]

---

[6] Defendants' suggestion that the lenders' recent purchase of defendants would be jeopardized by revocation of the guarantees is a distraction. Here, again, defendants provide no explanation of how that sale could be undone by plaintiffs' success. In any event, defendants acknowledge that they were acquired by the lenders after removal. It is well-settled that a court must assess "related to" removability as of the time of removal. In re Worldcom, Inc. Secs. Litig., 294 B.R. 553, 556 (S.D.N.Y. 2003).

III.    **This Action Is Subject to Mandatory Abstention and Remand.**

Defendants do not contest that this action satisfies five of the six factors for mandatory abstention. They challenge only one element, namely, the ability of the New York state court to timely adjudicate the case.

Defendants' analysis ignores the fact that timeliness and potential impact on the bankruptcy are intertwined. Whether resolution is "timely" depends on what effects the passage of time would have on the bankruptcy action. As this Court has noted, "it has been suggested that timeliness be referenced against the needs of the title 11 case, rather than against an absolute time guideline." In re Bradlees, Inc., No. 04 Civ. 5500 (HB), 2005 WL 106794, at *7 (S.D.N.Y. Jan. 19, 2005) (internal quotation marks omitted); see In re Amanat, 338 B.R. 574, 582 (Bankr. S.D.N.Y. 2005) ("There has been no sufficient showing that the State Court action cannot move as quickly as necessary *in the context of the bankruptcy proceedings*." (emphasis added)). Even defendants implicitly acknowledge that timeliness cannot be divorced from the potential impact on the bankruptcy. See Oppos. at 21 (noting that "whether the state court proceeding would prolong the administration or liquidation of the estate" is a factor in assessing timeliness). Yet defendants never articulate how the time it would take to litigate in state court would adversely affect the administration of the Solidus bankruptcy. And as explained in detail above (see supra at 5), all indications are that the outcome of this action will have no effect on the Solidus estate, even were we to assume *arguendo* that it would take the New York state court longer than a federal court to decide plaintiffs' claims.

Furthermore, the statistics on which defendants rely are not on point. The fact that the New York Supreme Court Commercial Division reports a duration of 700 days to disposition for contract cases tells this Court nothing about whether the New York court could timely adjudicate *this* action. Not only do defendants ignore the connection between timeliness and potential

impact on the specific bankruptcy at issue here, but this action was not in the Commercial

Division when defendants removed it. In fact, the same report on which defendants rely also

notes that in recent years the Commercial Division has eased the burden on the dockets of other

trial parts by removing from those dockets those cases that are the most complex.[7] More

importantly, defendants' argument is misleading in that the report does *not* say that the average

contract action takes more than 700 days. Rather, that figure is only for cases in which a note of

issue has been filed (i.e., cases in which pretrial proceedings have ended and the case is deemed

"trial ready"). For cases in which the courts are asked to take some action, but that are disposed

of prior to being trial ready, the report states that the time from request for judicial intervention

to disposition is just 311 days.[8] Both of these timelines are no less expeditious than comparable

statistics from this Court. For cases where some court action is required, the median disposition

times in the Southern District of New York are approximately 780 days (25.7 months) for

dispositions through trial, 330 days (10.9 months) for "before pretrial" dispositions, and

approximately 370 days (12.3 months) for "during or after pretrial" dispositions.[9] Defendants'

statistical argument is thus a smokescreen. See also Bradlees, 2005 WL 106794, at *7 ("Finally,

as the [bankruptcy court in another matter] noted, an examination of pertinent statistics indicate

there is no great disparity between the median time it takes for a civil proceeding to work its way

through the state or federal system." (internal quotation marks omitted)); Acolyte Elec. Corp. v.

New York, 69 B.R. 155, 180 (Bankr. E.D.N.Y. 1986) (rejecting "conclusory statement that

---

[7] See J. Solomon Decl., Ex. B (Commercial Division Report), at 6.

[8] See id. at 4.

[9] See id. Ex. C (Federal Court Statistics).

matters generally take longer to work their way through the state court in this area of the country"), aff'd, Misc. No. 86-0329 (JBW), 1987 WL 47763 (E.D.N.Y. March 27, 1987).

Nor is defendants' cause furthered by their argument that this action is "at the starting line," while the bankruptcy proceedings are already underway. Oppos. at 21. This action was filed just three and a half months after the bankruptcy petition, and merely three *weeks* after the bankruptcy court ruled, at the urging of Solidus and its lenders, that it would not adjudicate plaintiffs' claims. In contrast, the cases on which defendants rely involved state court actions brought *years* after bankruptcy petitions. See Renaissance Cosmetics, Inc. v. Dev. Specialists Inc., 277 B.R. 5, 10 (S.D.N.Y. 2002) (two years); Neuman v. Goldberg, 159 B.R. 681, 684 (S.D.N.Y. 1993) (three years). Far from being "well advanced," the Solidus bankruptcy proceedings are so young that the bankruptcy court has not even set a bar date for filing proofs of claims or held a hearing to set a bar date.[10]

In short, there is no reason to believe that state court adjudication of this matter would be untimely, that any hypothetical delay would impact the bankruptcy proceeding, that this action is significantly behind the bankruptcy proceeding, or that state courts are generally and materially slower than federal courts in adjudicating such claims.[11]

---

[10] A request to set a bar date was just filed on April 25, and a hearing on that request is set for May 21. See J. Solomon Decl. Ex. D.

[11] Defendants mischaracterize the burden to show timeliness. Plaintiffs are not required to set forth proof that the state court would timely adjudicate the action. See Bradlees, 2005 WL 106794, at *7 ("[N]otwithstanding Vornado's argument that Stop & Shop is required to affirmatively present evidence that the matter can, in fact, be timely adjudicated in state court, it is unclear that such an obligation exists."); Acolyte, 69 B.R. at 180 ("Although several bankruptcy courts have required the movant affirmatively to show that the matter can be timely adjudicated in the state court, this would seem to reverse the usual burden implicit in the general rule that the party seeking to litigate in a federal forum must first establish that right." (internal citations omitted)).

## IV.    Equitable Factors Favor Permissive Abstention and Remand.

Defendants' opposition does not address the many factors that strongly support

permissive abstention.  Chief among them is defendants' transparent forum shopping:  first,

when trying to avoid any bumps on the road to approval of the DIP financing, their privy argued

to the bankruptcy court that it should not adjudicate plaintiffs' claims; now, with that financing

safely in hand, defendants have entirely reversed course to urge this Court to send those same

claims to the bankruptcy court.  See 28 U.S.C. § 1334(c)(1) (permitting abstention "in the

interest of justice").  Further, the California bankruptcy debtor is not a party to this action, and

plaintiffs do not seek to affect the debtor's rights in any way.  Nor do plaintiffs' claims implicate

any bankruptcy or other federal laws or rights.  In addition, even assuming *arguendo* that this

action is "related to" the Solidus bankruptcy, all parties agree that the claims would be non-core.

As a result, the bankruptcy court could not finally adjudicate any of plaintiffs' claims.  It could

promulgate only proposed findings and conclusions to the district court, which would review the

bankruptcy court's recommendations *de novo* -- making adjudication in bankruptcy court

significantly less efficient than in state court.  See 28 U.S.C. § 157(c)(1).  All of these factors

support permissive abstention.  Defendants have no answers to any of them.

Nor do defendants adequately address other considerations favoring abstention.  As

discussed above (see supra 5), the connection between this action and the Solidus bankruptcy,

along with the potential for interference with the bankruptcy, is tenuous and remote.  Indeed, one

of the guarantees that plaintiffs challenge was issued prior to Solidus' bankruptcy and has no

arguable connection to that bankruptcy.  In addition, defendants only superficially address

comity concerns and the fact that only state laws apply to this action.  Defendants erroneously

assert that the claims implicate solely Massachusetts law.  While plaintiffs' notes are governed

by Massachusetts law, both of the guarantees that defendants fraudulently conveyed were issued

pursuant to New York law.  See Pl. Opening Br. at 4-5.  In any event, regardless of which state's

fraudulent conveyance statute will apply following a choice of law analysis, the Massachusetts

and New York statutes are substantially similar.  Compare Mass. Gen. Laws c. 109A, §§ 5(a)(1),

(2), with 6 N.Y. Debtor & Creditor Law § 282, et seq.  What is clear is that neither California

law nor bankruptcy law will govern plaintiffs' claims.  Furthermore, defendants offer too narrow

a view of comity concerns.  The respect that federal courts owe to state courts is not limited to

situations in which state courts apply their own forum states' laws.  See 28 U.S.C. § 1334(c)(1)

(permitting abstention "in the interest of comity with State courts or respect for State law"

(emphasis added)); Buechner v. Avery, No. 05 Civ. 2074 (PKC), 2005 WL 3789110, at *6

(S.D.N.Y. Feb. 14, 2005) ("The interests of comity are promoted by allowing the claims to

remain where the plaintiffs elected to bring them, i.e. state court.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court remand this action to

the New York state court from which it was removed.

Dated: Boston, MA
      May 7, 2008

SULLIVAN & WORCESTER LLP


By:  _s/ Joshua L. Solomon_____
    Andrew T. Solomon (AS 9200)
    1290 Avenue of the Americas, 29th Floor
    New York, NY 10104
    Tel. (212) 660-3000
    Fax (212) 660-3001

    Laura Steinberg (LS 0276), *pro hac vice*
    Joshua L. Solomon (JS 5848), *pro hac vice*
    One Post Office Square
    Boston, MA  02109
    Tel. 617-338-2800
    Fax 617-338-2880

    *Counsel to plaintiffs*